## H. L. BURNS v. V. E. ESSLING AND OTHERS.[1]

June 22, 1923.

No. 23,492.

**Amendment of complaint in contempt.**

1. In discharging an order to show cause why defendants should not be punished for disobeying a temporary restraining order, the court may permit an amendment to the complaint, and, as a condition for the discharge of the order, may require defendants to refrain from doing the act pleaded by the amendment.

**City council of Eveleth without authority to pay for hockey rink.**

2. Under the charter of the city of Eveleth, the council had no authority to pay claims against a hockey rink which was to be transferred to the city for no other consideration than the payment of such claims.

**Expenditure of public funds for private purpose illegal.**

3. Public funds cannot be lawfully expended for any purpose not essentially of a public nature. An expenditure is illegal if the primary object is to promote a private purpose, although incidentally some public purpose will also be served.

**Whether acquisition of property is for a public purpose, a judicial question.**

4. Whether property is acquired for a public or a private purpose is a judicial question to be determined according to the preponderance of the evidence. The evidence supports a finding that the property to be transferred to the city of Eveleth was not to be acquired for public purposes.

[1]Reported in 194 N. W. 404.

Action in the district court for St. Louis county to restrain the city of Eveleth and its servants from paying for or maintaining the New Eveleth Hockey Rink and from pledging the city's credit for that purpose. Plaintiff's motion for a temporary injunction was granted. The case was tried before Freeman, J., who made findings and granted a permanent injunction. From an order denying their motion for additional findings and amended conclusions or for a new trial, defendants appealed. Affirmed.

*J. C. McGilvery* and *Warner E. Whipple*, for appellants.

*Giblin & Manthey*, for respondent.


Lees, C.

This is a taxpayer's action brought to permanently enjoin the city of Eveleth and its mayor, councilmen, treasurer and clerk from pledging the credit or expending the funds of the city to aid in the construction of a hockey rink. Plaintiff obtained an order requiring defendants to show cause why a temporary injunction should not be granted and restraining them in the meantime from taking the threatened action. A temporary injunction was granted in December, 1921. A trial on the merits was had in May, 1922, resulting in a decision in plaintiff's favor, and defendants have appealed from an order denying a new trial.

The original complaint alleged that defendants were about to expend the city's money in paying for labor and materials furnished to the Eveleth Athletic Association to construct a hockey rink, taking in return the bonds of the association. This was the threatened action which was temporarily enjoined. Thereafter the association offered to transfer the rink to the city and the offer was accepted. A condition attached to the offer was that the city should pay the outstanding bills for labor and materials furnished to construct the building. On learning of the acceptance of the offer, plaintiff had the individual defendants cited into court to show cause why they should not be punished for contempt. After a hearing they were absolved from the charge, but were ordered not to expend any of the city's funds in purchasing or completing the rink while this

suit was pending, and plaintiff was given leave to amend his complaint by pleading the facts which had newly occurred.

1. Defendants' first contention is that this order was one the court had no jurisdiction to enter because the changed situation had not yet been pleaded. They assert that under the circumstances the court could not make findings and an order for judgment which did not fit the facts pleaded in the original complaint. The condition for dismissing the contempt proceeding was that defendants should draw no more money from the city treasury to pay claims for laborers and materialmen. The court had the power to attach this condition to its order and so prevent defendants from indirectly doing the very thing they had been commanded not to do.

Would the fact that the order was not supported by the original complaint deprive the court of the jurisdiction it undoubtedly had of the parties and the subject matter in litigation? Clearly it would not. Any relief consistent with the complaint and within the issues subsequently tried might properly be granted. Section 7896, G. S. 1913. The amendment set out facts which happened after suit was begun. In effect it was a supplemental pleading by which the kind of relief plaintiff claims he was entitled to from the beginning was properly enlarged or changed. Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. 663. The issues to be tried were defined by it and the defendants' answer. The relief granted was consistent with these pleadings and was within the issues made by them. For these reasons the contention cannot be sustained.

2. The city of Eveleth has a so-called "home rule" charter. It declares that the council shall have power to acquire by purchase, condemnation or otherwise, places of recreation and public buildings for the good of the city. The resolution accepting the association's offer recited that the city needed a rest room, tourists' camp and market place, and that the property was adapted to such uses. It was shown that the building could be used for these purposes, but the court found that the primary object of the defendants was to acquire a hockey rink in which the athletic association could "stage hockey games between a team whose salaries and expenses

* * * were to be paid largely by the city. * * * and other teams"; that the ice sheet in the rink "would be devoted primarily to the use of such a hockey team," and that "an admission charge of a substantial sum would be charged persons desiring to witness such games." It is not contended that the city may lawfully own and support a rink where contests between rival hockey teams are staged for the entertainment of those paying an admission fee. The time may come when, as in ancient Rome, the rulers of a city will be permitted to amuse the people with games and spectacles in a public arena, but it is not yet here. As Judge Cooley tersely said in his treatise on Taxation, p. 210: "To furnish amusements to its citizens is not one of the functions of government." There are many permissible forms of municipal activity intended to contribute in a measure to the enjoyment of life in cities. Children's playgrounds, public baths and band concerts are familiar examples. Other illustrations may be found in the reports of the decisions of this court. City of Minneapolis v. Janney, 86 Minn. 111, 90 N. W. 312; Anderson v. City of Montevideo, 137 Minn. 179, 162 N. W. 1073.

The wisdom or expediency of a proposed expenditure of the taxpayers' money for such purposes is to be determined solely by the legislature or by the local authorities to whom legislative powers have been delegated. But public funds can only be expended for public purposes and the courts must determine whether a given expenditure is for such a purpose, and will enjoin it at the suit of a taxpayer if it is not. Castner v. City of Minneapolis, 92 Minn. 84, 99 N. W. 361, 1 Ann. Cas. 934. It is well settled that, if the primary object of an expenditure of municipal funds is to subserve a public purpose, the expenditure is legal, although it may also involve as an incident an expenditure which, standing alone, would not be lawful. It is equally well settled that, if the primary object is to promote some private end, the expenditure is illegal, although it may incidentally serve some public purpose also. Coates v. Campbell, 37 Minn. 498, 35 N. W. 366; Bates v. Bassett, 60 Vt. 530, 15 Atl. 200, 1 L. R. A. 166; Brooks v. Brooklyn, 146 Iowa, 136, 124 N. W. 868, 26 L. R. A. (N. S.) 45; Wheelock v. City of Lowell, 196 Mass. 220, 81 N. E. 977, 124 Am. St. 543, 12 Ann. Cas. 1109; McQuillin,

Municipal Corporations, § 1117; 19 R. C. L. p. 780. The courts as a rule have attempted no judicial definition of a public as distinguished from a private purpose, but have left each case to be determined by its own peculiar circumstances. Green v. Frazier, 253 U. S. 233, 40 Sup. Ct. 499, 64 L. ed. 878.

Was the court warranted in finding that defendants had planned the expenditure of public funds for an unauthorized purpose? This is the principal question presented by this appeal.

Three of the defendants were members of the Athletic Association. In the fall of 1921 the association began to construct a frame building 230 feet long and 150 feet wide, with seating accomodations for 3,000. The cost of the building was estimated at $65,000, 20 per cent thereof representing the expense of providing seating accommodations. The architect's plans provided for an arena which could contain a sheet of ice 190 feet long and 87 feet wide, booths for ticket sellers and a room on either side of the entrance for the use of rival hockey teams. After the building was begun, one of these rooms was designated on the plan as men's and the other as ladies' retiring room. The court found that the city helped to support a hockey team; that in 1920 the Eveleth team won the championship in one of the three districts included in the National Hockey Association, but the championship teams in the other districts refused to play at Eveleth because the ice sheet was too small. The Athletic Association therefore decided to build a rink large enough to comply with the requirements of the Hockey Association, and to that end had the plans prepared and the construction of the building begun. The title to the land was held in trust for the association by one of its members. Their plan was to obtain from the city most of the money needed to pay for the building, giving the city bonds of the association for the amounts advanced. There seems to have been no thought of the illegality of such a plan of action until after this suit was begun and defendants had consulted their counsel. This plan was being carried out when it was interrupted by the first restraining order. It was then changed and the offer made to transfer the property, but the second restraining order prevented the execution of the modified plan. In modifying it de-

fendants acted upon the advice of counsel. When the offer was made, 60 per cent or more of the labor and materials had been furnished. Approximately $30,000 was necessary to discharge the obligations incurred by the association.

The evidence showed that the city was maintaining a so-called recreational building, completed in the year 1919 at a cost of more than $100,000. It contained a skating rink, which was so crowded at times that skaters had to go to outside rinks maintained by the city, and the council had been asked by numerous citizens to provide more indoor rinks. It is conceded that the recreational building was not large enough to contain a sheet of ice of the size prescribed by the rules of the Hockey Association. The court might infer from all the evidence that the new building was planned and erected principally for the purpose of providing a rink large enough to comply with such rules; that the thought of using it for other purposes came after it became known that the city could not lawfully furnish the money to build such a rink. If defendants' real object was to acquire a building not to be used primarily but only incidentally as a hockey rink, it is difficult to explain why seats for 3,000 people were arranged in tiers around a huge arena, or why ticket booths and shower baths were installed. Certainly these are not found in other market places, skating rinks or rest rooms. The fact that a hockey rink may be used for other purposes is not of controlling importance, for almost any building may be adapted to a variety of uses. The question with which the trial court was concerned was whether the suggested uses were merely colorable, masking a design to evade the law.

It is strongly urged that in reviewing the findings we should not be guided by the usual rule, but the rule governing the courts in reviewing an order or determination of a local tribunal invested with power to exercise legislative judgment and discretion. We think this open to doubt. Ind. School Dist. No. 65 v. County Board, 155 Minn. 453, 194 N. W. S. In denying a new trial the court said that the arrangement of the building, as well as the plans, conclusively indicated that a hockey rink and nothing else was in the mind of the designer; that any other finding would stultify the court and could

not be made without disregarding the evidence as well as experience and common sense. This straightforward and vigorous statement indicates pretty clearly that the evidence left no doubt in the court's mind as to the real purpose for which the building was planned and erected and that, whether the evidence was weighed according to one rule or the other, the finding would be the same. However that may be, it is clear that two distinct questions were before the court: Was the property being acquired for the use of the public for some legitimate public purpose, and, if so, were the city authorities justified in determining that public interests would be served by acquiring it? In determining the second question the court would be governed by the rule for which defendants contend. But, if the first question was answered in the negative, no consideration of the second was necessary. It was so answered. It was a judicial question. It always is when the character of the use is involved in proceedings to acquire property by the exercise of the power of eminent domain. Dunnell, Minn. Dig. and Supps. § 3027. Manifestly it is none the less a judicial question when property is to be acquired by purchase or by a gift conditioned upon the payment of charges against the property. The inquiry was whether the real purpose of defendants was to acquire the building for an authorized or an unauthorized purpose. That was an ordinary question of fact for determination by the trial court. Its findings must stand if supported by a fair preponderance of the evidence, as we think they are.

3. Our attention is called to the power to accept gifts conferred on cities by section 1785, G. S. 1913, and on the city of Eveleth by its charter, and the argument is advanced that the city has been tendered a gift of this property and may accept it regardless of the fact that a condition is attached to the proposed gift which the city must fulfil if it takes the property. It must pay the debts contracted by the association and incur some additional expense to complete the building. The purpose of this suit is to enjoin an unauthorized expenditure of public funds—not to prevent the acceptance of a gift. Defendants are enjoined from purchasing the property or otherwise acquiring the title thereto, assuming control thereof, or hiring persons to work or give athletic exhibitions in the building.

Although not expressly said, it is to be inferred from what goes before that the court meant to enjoin the expenditure of public funds for any of these purposes. Thus read, the order for judgment goes no farther than is warranted by the pleadings and findings. We have considered all the points covered in excellent briefs, by which we have been greatly aided. We reach the conclusion that the case was correctly decided and that the order denying a new trial must be affirmed.