HENRY J. BEHRENS v. CITY OF MINNEAPOLIS AND OTHERS.[1]

March 5, 1937.

No. 31,103.

R. S. *Wiggin,* City Attorney, and *John F. Bonner,* Assistant City Attorney, for appellants.

*Child & Child,* for respondent.

HILTON, JUSTICE.

Appeal from an order of the district court of Hennepin county temporarily restraining the city of Minneapolis and its officers from expending $19,000 for the dredging of a portion of the Mississippi river.

The present head of the nine-foot channel in the Mississippi river is at a point in the river crossed by a bridge of the Northern Pacific Railroad. The municipal dock of the city of Minneapolis

[1]Reported in 271 N. W. 814.

extends upstream to this bridge. The Minneapolis Gas Light Company, a private corporation furnishing natural and artificial gas for industrial and residential purposes in the city of Minneapolis, owns the riparian land extending 410 feet immediately above the railroad bridge on the municipal dock side of the river. Just above that property is the St. Anthony Falls, at present a barrier to navigation. March 3, 1936, pursuant to an application made by the gas company, the war department altered the harbor line of the river so that it extended over onto this 410 feet of shore line. April 10, 1936, the gas company leased this riparian strip of land to the Hennepin Home Supply Company for ten years, said land to be used for loading and unloading facilities and as a place to construct certain large tanks for the storage of petroleum.

May 29, 1936, the council of the city of Minneapolis authorized the proper city officials to set aside $19,000 from the unappropriated balance of the permanent improvement fund to be used to pay for the dredging of the river 550 feet above the present head of navigation. The dredging was to commence at the uppermost end of the municipal dock and extend under the aforementioned railroad bridge and along the 410 feet of riparian land belonging to the gas company. Before any part of the appropriation had been paid out, plaintiff, as a citizen and taxpayer, brought this action to restrain such expenditures of city funds. A temporary injunction was issued.

In an appeal of this nature this court does not go into the merits of the controversy. There has been no trial as to the real issues, and a decision as to the justification of the issuance of a temporary writ affects in no way the final determination of the cause. 2 Mason Minn. St. 1927, § 9386, provides for the issuance of a temporary injunction, and within the limits there fixed, its allowance rests largely in the judicial discretion of the trial court, which will not be reversed except for a clear abuse of that discretion. See 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 4490, and cases there cited.

No affidavits were filed in support of the prayer for relief. However, the complaint and reply were both verified; the allegations

thereof were positive. In such a situation a temporary injunction, if the case warrants it, may be allowed without further showing. Stees v. Kranz, 32 Minn. 313, 20 N. W. 241; see McGregor v. Case, 80 Minn. 214, 83 N. W. 140. Verified pleadings may be considered as affidavits tending to prove or disprove the claims of the respective parties. Many of the allegations of the complaint here filed were denied by the answer, but under our statute a denial of the equities will not prevent a temporary injunction from issuing. Ekeberg v. Mackay, 114 Minn. 501, 131 N. W. 787, 35 L.R.A.(N.S.) 909, Ann. Cas. 1912C, 568; Watters v. City of Mankato, 106 Minn. 161, 118 N. W. 358. The complaint, answer, and reply, as pleadings, determine whether the proceeding is one in which an injunction should issue, but, being verified, they, like other sworn statements, as affidavits and not as pleadings, directly support or oppose the relief asked. There remains then for the determination of this court only the question as to whether the lower court clearly abused the discretion vested in it.

Art. 9, § 1, of the constitution of Minnesota, provides that "* * * taxes * * * shall be levied and collected for public purposes, * * *." The fund out of which the improvement proposed to be made was raised by taxation. Generally, a resident taxpayer has sufficient property interest in municipal funds to seek to enjoin the illegal expenditures thereof by municipal officers. 11 Minn. L. Rev. 278; Crampton v. Zabriskie, 101 U. S. 601, 25 L. ed. 1070; M. St. P. R. & D. E. T. Co. v. City of Minneapolis, 124 Minn. 351, 145 N. W. 609, 50 L.R.A.(N.S.) 143. Although the wisdom or expediency of a proposed expenditure of taxpayers' money is to be determined by the legislature or by the local authorities to whom legislative powers have been delegated, public funds can only be expended for a public purpose. Whether a given expenditure is for such a purpose may be determined by the courts. Castner v. City of Minneapolis, 92 Minn. 84, 99 N. W. 361, 1 Ann. Cas. 934; Burns v. Essling, 156 Minn. 171, 194 N. W. 404.

The complaint in this proceeding alleged that the proposed expenditure would be solely for a private purpose in that it would

benefit only the Minneapolis Gas Light Company; that access to the improvement could be had only over that company's property except for those instances in which someone might desire to travel up the river to the *cul-de-sac* which would be created; that the project would be of no use to anyone except the gas company because of the barrier which the St. Anthony Falls offers to navigation at the present time. It is asserted that the improvement, if made, would not be enduring or permanent but would require the expenditure of large additional funds over a period of years; also that the natural channel of the river, which most likely would be the part dredged were the interest of the public the primary purpose, actually is not at the place contemplated to be improved even though the war department in its permit to the gas company designated the proposed improved part as the channel. Where the primary purpose of the expenditure of funds raised by taxation is to promote a private interest the purpose is not public. The complaint alleges that to be the situation here. Most of the allegations therein were of course denied by the answer, but it cannot be held that the court clearly abused its discretion because it chose to accept the statements of one party rather than those of the other—obviously both did not represent the true situation, but on this appeal, when there is principally nothing but affidavits upon which to make a determination, it cannot be assumed that the court adopted the wrong view. Suffice to say that the allegations of the complaint, which have not been demonstrated to be false, indicate that the purpose for which the money is to be spent is not primarily public.

The principal contentions of the defendants are that the dredging will render useable a portion of the river not now navigable for the type of vessel commercially plying the river and that it will induce the federal government to extend the nine-foot channel above its present head. There is no support for this latter assertion; the former is placed in issue by the allegations of the complaint. After a hearing on the merits perhaps it will be shown that these allegations cannot be proved. Then a different conclusion may be reached. Much of the argument of counsel was devoted to the merits of the

controversy. That phase of the case is not before this court.

By act of congress, 11 St. p. 166, c. 60, which authorized the people of the territory of Minnesota to draw up a state constitution, it also was provided that the navigable waters therein, which included the Mississippi river, "shall be common highways." Defendants, citing numerous cases holding that courts may not question the expenditure of public money used for the purpose of improving public highways, argue that the same principles are controlling in this case, as the river is a highway. Although the rule as cited may be correct, courts are not precluded from making inquiry as to whether a proposed expenditure is primarily for the purpose of improving the highways rather than for some ulterior motive. Further, no act of this state is cited wherein the Mississippi river has been recognized as a highway in the same sense as are the public roads over which the state has exclusive jurisdiction. No such jurisdiction maintains over the Mississippi river. No improvements can be made on it without the consent of the federal government. Under the commerce clause, U. S. Const. art. I, § 8, congress is given all power necessary to the regulation of navigation on the Mississippi and other navigable streams. Thus different considerations might obtain when a local subdivision of a state desires to expend money for the improvement of such a stream than do when improvement is sought to be made on a highway over which the state has exclusive control.

A great many of the cases cited by defendants involved proceedings for permanent injunctions. Quite naturally more proof would be required to sustain the granting of that relief than is necessary in a case such as this. Here there is no showing nor even a claim that anyone will be damaged because of the writ issued. A bond posted by plaintiff will adequately care for any costs incurred. Defendants have no just cause to complain.

Finally, defendants claim that the result of the improvement "will be to furnish the Minneapolis Gas Light Company with facilities for the storage of oil, thus lowering the price to consumers thereof." If a public purpose at all, that result is only incidentally so. Al-

though the purpose to be accomplished by the expenditure of funds raised by taxation need not be exclusively public, 1 Cooley, Law of Taxation (4 ed.) § 180, indirect and incidental benefits which may -result to the public do not make the purpose a public one where the direct object is private. It is the primary purpose which is controlling. *Id.*, § 179; Burns v. Essling, 156 Minn. 171, 194 N. W. 404; Coates v. Campbell, 37 Minn. 498, 35 N. W. 366. No doubt any private person would be able to sell a product cheaper were his costs thereof lowered as a direct result of the expenditure of public funds. However, that would not justify such a gratuity. Nerlien v. Village of Brooten, 94 Minn. 361, 102 N. W. 867.

By this decision we hold that there is no showing that the lower court clearly abused its discretion, as must be done in a case of this nature in order to warrant a reversal, especially where no damage is likely to result because of the relief afforded. No attempt has been made to pass on the merits, a matter which is distinctly reserved.

Affirmed.

MR. JUSTICE STONE concurs in the result.

MR. JUSTICE PETERSON, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.