# STATE, BY J. W. CLARK, COMMISSIONER OF DEPARTMENT OF BUSINESS DEVELOPMENT, v. APPLEBAUMS FOOD MARKETS, INC.

106 N. W. (2d) 896.

December 23, 1960—No. 38,164.

*Milton H. Altman* and *Lipschultz, Altman, Geraghty & Mulally,* for appellant.

*Walter F. Mondale,* Attorney General, *Sydney Berde,* Deputy Attorney General, and *John H. Sandor,* Special Assistant Attorney General, for respondent.

*C. Donald Peterson* and *Howard, Peterson, LeFevere, Lefler & Haertzen,* for Red Owl Stores, Inc., amicus curiae.

Knutson, Justice.

This is an appeal from an order granting a temporary injunction.

The action arises out of an alleged violation of our statutes, formerly designated as "Minnesota Unfair Discrimination and Competition Act," now more popularly referred to as the "8% law." In order to have the facts involved in this proceeding in clear perspective, it is necessary to have in mind the applicable statutes.

Minn. St. 325.04, as far as here material, reads:

"Any retailer * * * engaged in business within this state, who sells, offers for sale or advertises for sale, any commodity, article, goods, wares, or merchandise at less than the cost thereof to such vendor, or gives, offers to give or advertises the intent to give away any commodity, article, goods, wares, or merchandise for the purpose or with the effect of injuring a competitor or destroying competition, shall be guilty of unfair discrimination; and, upon conviction, subject to the penalty therefor provided in section 325.48, subdivision 2."[1]

Section 325.06 provides a number of exceptions to § 325.04 and, as far as material here, reads:

"The provisions of section * * * 325.04 * * * shall not apply to any sale made:

\* \* \* \* \*

"(4) In an endeavor made in good faith to meet the legal prices of a competitor selling the same commodity, articles, goods, wares, or merchandise in the same locality or trade area.

"*The price of a retail competitor which is less than eight percent above the manufacturer's published list price less his published trade discounts where the manufacturer publishes a list price, or in the absence of such a list price less than eight percent above the actual current delivered invoice or replacement cost without deducting customary cash discounts plus the amount of any excise or sales tax shall be prima facie evidence that it is not a legal price, within the meaning of this section.*

\* \* \* \* \*

---

[1]Section 325.48, subd. 2, provides that willful violation of § 325.04 is a misdemeanor.

*"Any retailer * * * may request the commissioner of the department of business development to ascertain and disclose to him, the current manufacturer's published list price less published trade discounts on any commodity, article, goods, wares, or merchandise, and it shall then be the duty of the commissioner of the department of business development, within 48 hours of such request, to ascertain and disclose to the person making such request, the current manufacturer's published list price less published trade discounts.*

*"Failure to make such request by any person before reducing his price on any commodity, article, goods, wares, or merchandise below his cost shall be prima facie evidence of not acting in good faith within the meaning of this paragraph."* (Italics supplied.)

Section 325.52, as far as material, reads:

"Any sale made by the retail vendor at less than eight percent above the manufacturer's published list price, less his published trade discounts, where the manufacturer publishes a list price; or, in the absence of such list price, at less than eight percent above the actual current delivered invoice or replacement cost, without deducting customary cash discounts, plus, in either case, the amount of any excise or sales tax imposed on such merchandise subsequent to the purchase thereof and prior to the resale thereof, for the purpose or with the effect of injuring a competitor or destroying competition, shall be prima facie evidence of the violation of sections 325.02 to 325.07.

"No prosecution shall be had nor any action at law for damages or injunctive relief shall lie where the vendor sells at a price not less than 15 percent above the manufacturer's published list price, less his published trade discounts, where the manufacturer publishes a list price; or, in the absence of such a list price, at not less than 15 percent above the current delivered invoice or replacement cost, without deducting customary cash discounts, plus, in either case, the amount of any excise or sales tax imposed on such merchandise subsequent to the purchase thereof and prior to the resale thereof."

Section 325.49, as far as material, reads:

"In addition to the penalties provided in section 325.48, subdivision

2, clause (1), the courts of this state are hereby vested with jurisdiction to prevent and restrain violations of sections 325.02 to 325.07. Any person, partnership, corporation, or association damaged, or who is threatened with loss or injury, by reason of a violation of these sections shall be entitled to sue for and have injunctive relief in any court of competent jurisdiction against any damage or threatened loss or injury by reason of a violation thereof and for the amount of the actual damages to him, if any. In order to obtain such injunctive relief it shall not be necessary to allege or prove that an adequate remedy at law does not exist."[2]

Section 362.14, subd. 3, reads:

"In addition to the penalties provided by law for violation of the laws referred to in subdivision 1,[3] specifically and generally, where injunctive relief is not otherwise provided by law, the courts of this state are vested with jurisdiction to prevent and restrain violations of those laws. Whenever it shall appear to the satisfaction of the commissioner that any of those laws is being violated, or is about to be violated, he shall be entitled, on behalf of the state, to sue for and have injunctive relief in any court of competent jurisdiction against any such violation or threatened violation without abridging the penalties provided by law."

Two actions were brought by the commissioner seeking injunctive relief to restrain the violation of § 325.04. In one action, designated as File No. 311,202, the commissioner of the Department of Business Development alleged that defendant had violated the "8% law" when it advertised or sold certain goods at a price below defendant's cost on February 15, 17, 18, and 22, 1960. In this action defendant answered, alleging that the sales so made were made in an effort in good faith to meet the legal price of a competitor. In the other action, designated as File No. 311,203, the commissioner alleged that de-

---

[2]This proceeding is not brought by a person, partnership, corporation, or association damaged, or who is threatened with loss or injury, by reason of a violation of these sections, so it is doubtful that this section has any application.

[3]Subd. 1 includes violation of § 325.04.

fendant violated the same act on March 7 and 9, 1960, and on other dates, by advertising for sale many products below defendant's cost and also by advertising that it would give away merchandise and trading stamps.

The two actions were consolidated for trial. Defendant contends that the consolidation was improper, but in view of the result arrived at, herein we need not determine that question. It may be admitted, for the purpose of this decision, that defendant sold or advertised for sale merchandise at less than eight percent above its cost, and it may also be admitted that defendant has not applied to the commissioner for a determination of the manufacturer's published list price under § 325.06.

The trial court granted a temporary injunction restraining defendant from selling or advertising for sale such goods in violation of these statutory provisions. This appeal is from such order. A brief was filed amicus curiae, in which the constitutionality of the "8% law" is challenged. The questions presented for our determination are: (1) Did the commissioner establish a prima facie case that would justify the issuance of a temporary injunction? (2) May amici curiae raise the constitutionality of the statute involved when that issue is not raised by the parties to the litigation?

■   Most of the questions raised here are controlled by our decision in State, by Clark, v. Wolkoff, 250 Minn. 504, 85 N. W. (2d) 401. At the time that case was presented, § 325.04 prohibited sales below cost "for the purpose or with the effect of injuring competitors *and* destroying competition." (Italics supplied.)

This provision was amended by L. 1957, c. 822, § 2, so as to prohibit sales below cost "for the purpose or with the effect of injuring a competitor *or* destroying competition." (Italics supplied.)

Prior to the amendment, in order to establish a violation of § 325.04 it was necessary that it be shown that the sale was below cost and was made for the purpose or with the effect of both injuring competitors *and* destroying competition. Since the amendment, it is enough to show that sales were made below cost for the purpose or with the effect of either injuring a competitor *or* destroying competition. In other respects this section remained as it was when the Wol-

koff case was decided. In that case we said (250 Minn. 507, 85 N. W. [2d] 404):

"* * * Not every sale below cost is condemned under Minnesota law. Such an offer or sale must be accompanied by a certain purpose or have a certain effect. * * *

"* * * If a court finds from competent and sufficient evidence that the challenged offer or sale was not, in fact, made with the requisite dual purpose nor had such effect, then it must find that there is no violation."

The same is true now, in that the court must find a prohibited sale, coupled with the purpose or effect of either injuring or destroying competition.

The commissioner now asks us to adopt the so-called doctrine of incipiency, under which injunctive relief is available upon a simple showing of threatened injury to a competitor by sales below cost without any showing of the purpose or effect of such sale or that it has destroyed competition. We do not believe that our statute may be so construed. Adoption of such theory would require us to overrule the Wolkoff case. Section 325.06 deals only with defenses to an alleged violation of § 325.04. Before such defenses can come into play it is essential that a prima facie case of violation be established. Similarly, § 362.14, subd. 3, if it is applicable here, permits injunctive relief for a violation or threatened violation of § 325.04, but it must first appear that there has been a violation or that the statute is about to be violated before such injunctive relief is available. A mere sale below cost, absent the requisite statutory purpose or effect, is not a violation or threatened violation. To hold that a mere sale below cost is illegal might well run into serious constitutional objections.[4] Under the statute construed in the Wolkoff case, it was necessary that a sale below cost be coupled with the purpose and effect of injuring competitors *and* destroying competition. As we said above, it is now sufficient if such sale is coupled with the purpose or effect of injuring a competitor *or* destroying competition. Section 362.14, subd. 3, was in

[4]See, Fairmont Creamery Co. v. Minnesota, 274 U. S. 1, 47 S. Ct. 506, 71 L. ed. 893; Wiley v. Sampson-Ripley Co. 151 Me. 400, 120 A. (2d) 289.

existence at the time we decided the Wolkoff case exactly as it is now. The doctrine of incipiency is no more applicable now than it was then.

It follows that, before a temporary injunction can be justified, there must be established at least a prima facie violation of § 325.04 which would, if proved upon a trial, justify a permanent injunction.

■ Applying these rules to the record before us, has such prima facie showing of a violation or threatened violation been established? We think not. The affidavits submitted in support of the motion for a temporary injunction speak in generalities only. In effect, all that they establish is that some sales have been made below the permissible statutory price and that some giveaway programs have either been carried out or advertised and that such actions by chain stores generally hurt the independent stores. The strongest showing made in any affidavit is in that of Joseph F. Kielsa where, among other things, he says:

"* * * My volume has dropped 20% in the last two weeks due to the type of advertising by Knowlan, Kingpin, and Johnson, such as items sold under cost. This also includes Applebaums."

Even in this affidavit, and it is true of all the others, it does not appear that deponent operates a store in the vicinity of any store operated by defendant or that he was injured by such defendant. No showing at all has been made that the sales complained of were made for the purpose or effect of injuring a competitor or destroying competition. We assume that it might be safely said that all competition in a manner injures all other competitors in that advertising and reduction in cost of goods sold at any level are intended for the purpose of attracting additional customers, but such sales, unless they are contrary to our statutes, are not illegal. All that has been shown here is that sales have been made at a price lower than the cost of such goods plus eight percent.

The commissioner claims that, under §§ 325.06 and 325.52, a sale below cost is prima facie a violation. By the language of § 325.52, sales below cost must be coupled with the purpose or effect of injuring a competitor or destroying competition. It is only then that it becomes prima facie evidence of a violation of § 325.04. This statutory lan-

guage is so clear that it needs no exposition. Nor is it for us to take out of the statute language included by the legislature.

Obviously, § 325.06 applies only to sales. It does not apply to give-away programs. There would be no good reason for applying to the commission for a determination of the costs of goods that are to be given away. A careful reading of the statute renders the position of the commissioner untenable. Section 325.06 sets up defenses to a violation under § 325.04. When a vendor seeks to establish a defense, failure to request a determination of the manufacturer's price, as permitted by § 325.06, establishes prima facie lack of good faith. But before these defenses come into play, there must be a prima facie showing of a violation. Such showing is entirely lacking here.

It follows that injunctive relief prior to trial was not justified. The commissioner may be able to establish a violation that will justify an injunction upon a trial, but, based on the record before us, no such showing has been made.

■ A brief filed amicus curiae in behalf of Red Owl Stores challenges the constitutionality of the act. Neither of the litigants has raised this issue. Amicus curiae may not do so.[5] Consequently, we do not pass on this question.

Since the above opinion was written, we are confronted by a dissent. By ignoring the language of § 325.04 as to what is a violation or threatened violation of the act, the dissent would give the commissioner carte blanche authority to procure an injunction to prevent whatever he might construe as a violation. Whether there has been a violation or threatened violation of the act is a judicial question. Before an injunction may issue under § 362.14, there must be at least a prima facie showing of a violation or threatened violation of § 325.04. Such a showing, as we have pointed out above, is entirely lacking here. Apparently the dissent is not concerned with the rights of defendant but only with granting to the commissioner authority which obviously the legislature did not intend. To justify a finding of a

---

[5] 2 Am. Jur., Amicus Curiae, § 4; 3 C. J. S., Amicus Curiae, § 3e(2); State ex rel. Board of R. Commrs. v. Martin, 210 Iowa 207, 230 N. W. 540; see, also, 16 C. J. S., Constitutional Law, § 76.

prima facie showing of a violation or threatened violation of § 325.04, the dissent relies on a part of § 325.06, which deals only with defenses to violations of § 325.04 and does not spell out what is a violation thereof. Section 325.52 defines what is prima facie evidence of a violation of §§ 325.02 to 325.07, and the pertinent language is:

"Any sale made by the retail vendor * * * *for the purpose or with the effect of injuring a competitor or destroying competition,* shall be prima facie evidence of the violation of sections 325.02 to 325.07." (Italics supplied.)

The dissent would have us ignore the italicized language above and hold that any sale below the specified price is prima facie unlawful. The legislature obviously does not agree or it would not have included the language italicized above.

This section was amended by L. 1957, c. 822, by changing the language "injuring competitors" to "injuring a competitor" to conform to the change made in § 325.04. Otherwise there was no change in the establishment of a prima facie case.

Then, again, the dissent, by a misconstruction of our decision in State, by Clark, v. Wolkoff, 250 Minn. 504, 85 N. W. (2d) 401, seeks to impute to the legislature an intent which it obviously did not have in amending § 325.04. In the first place, the amending act (L. 1957, c. 822) became effective on April 27, 1957. Our decision in the Wolkoff case was issued on October 4, 1957, long after the legislature had adjourned. It is true that the case was pending in this court at the time the act was approved. It was argued orally here on April 10, 1957, a few days before the act became effective. The pending amendment later adopted by the legislature was not called to the attention of this court in the briefs or oral argument at any time prior to the decision of the case. It is pure speculation that the legislature had knowledge of the case pending before us when the amendment was adopted. In order to justify the assumption that the law was amended as a result of the pending case or the decision thereon later issued, we would have to indulge in just that kind of unwarranted speculation. In any event, the only change made by the amendment, as far as material here, was to change the language "injuring competi-

tors and destroying competition" to "injuring a competitor or destroying competition." The only effect of the amendment was that prior thereto it was necessary to show that the sale was made for the purpose or effect of both injuring competitors *and* destroying competition. Subsequent to the amendment it was sufficient to show that the sale was made for the purpose or with the effect of either injuring a competitor *or* destroying competition. The dissent would have us ignore both. Here, again, obviously the legislature does not agree. In so far as the legislative change is concerned, it does not affect our decision in the Wolkoff case except that now one of the two alternatives must be shown. It follows that before a prima facie case can be made out that would justify the issuance of an injunction one or the other of these two statutory prerequisites must appear. Neither is present here.

Reversed.

LOEVINGER, JUSTICE (dissenting).

This case arises upon the complaints of the commissioner of business development that defendant has violated Minn. St. 325.04, relating to below-cost sales and giveaways, and the commissioner's motion for a preliminary and temporary injunction. Upon verified pleadings and affidavits the district court entered a preliminary injunction. Defendant appealed. As the case comes to us, it involves only the issue whether the district court may enter a preliminary injunction upon the showing made here. Although the constitutionality of the statute has been challenged, it is not involved in this appeal. Needless to say, we are not now concerned with the wisdom or policy of the statute.

It is well settled in this state that issuance of a temporary or preliminary injunction rests largely in the discretion of the trial court, and that where the evidence upon which it is sought is conflicting, this court will not interfere with the action of the trial court in granting or refusing it.[1] Accordingly, we must, at this time, accept for pur-

---

[1]Seward v. Schrieber, 240 Minn. 489, 62 N. W. (2d) 48; Behrens v. City of Minneapolis, 199 Minn. 363, 271 N. W. 814; Mathwig v. Olson, 190 Minn. 262, 251 N. W. 518; Jannetta v. Jannetta, 205 Minn. 266, 285 N. W. 619.

poses of this decision that version of the facts, and the inferences therefrom, most favorable to the issuance of the injunction.

The facts which may be gathered from direct averment of the pleadings, affidavits, exhibits, or fair inference therefrom, are relatively simple. Defendant is engaged in the operation of a number of retail grocery supermarkets. These are located at what it described as "twelve convenient locations," of which eleven are distributed throughout St. Paul and its immediate environs, and one is in Minneapolis. The retail grocery market in the Twin Cities is "an extremely competitive one," in which there are a number of chain stores competing with defendant's retail stores as well as a large number of independent retailers also competing with the chains.

Defendant has offered and advertised for sale a number of articles at less than cost and has also offered and advertised that it will give away free an automobile and several certificates worth $100 in the purchase of clothing at a local store not involved here. This advertising was distributed to the public in St. Paul, and the offers made therein covered a period of at least four consecutive weeks.

Minn. St. 325.04, in so far as pertinent here, provides that it is unlawful for any retailer to offer or advertise for sale any commodity at less than the cost thereof to such vendor, or give or advertise with intent to give away any commodity "for the purpose or with the effect of injuring a competitor or destroying competition." Section 325.06 provides that these prohibitions shall not apply to various specified transactions, including sales "[i]n an endeavor made in good faith to meet the legal prices of a competitor selling the same commodity" in the same locality. A procedure for determining what is the legal price of a competitor is established, and it is provided that failure to follow such procedure "shall be prima facie evidence of not acting in good faith." Since defendant admittedly did not follow the prescribed statutory procedure with respect to the challenged transactions, the trial court was justified in disregarding defendant's claim of meeting competition at this stage of the proceedings.

There are similar statutes against below-cost sales in a great majority of the states, although the statutory language varies from state to

state.[2] These statutes are, like the Federal laws relating to pricing, supplementary or secondary antitrust or trade-regulation laws. The fundamental public policy of Minnesota, as of the United States, is to establish and maintain competition as the general condition and basic determinant of the economic system.[3] To this end, both jurisdictions have a primary or basic antitrust law which is directed against monopoly and restraint of competition in general terms.[4] These basic general statutes are supplemented by other statutes which forbid a number of specific practices that, in the legislative judgment, tend unduly to threaten, diminish, or restrain competition. The legislative object of such supplementary or secondary antitrust laws is to stop in their incipiency trade practices thought to have a tendency to diminish, restrain, or injure competition.[5]

The Minnesota legislature has manifested this object by investing the courts with jurisdiction both *to prevent* and to restrain violations of § 325.04, and by empowering the commissioner to sue for and the courts to grant an injunction "against any such violation or *threatened violation*." (Italics supplied.) Minn. St. 362.14. It is as clear as language can make it that the commissioner was not required to wait for an actual violation of § 325.04 to be consummated before securing an injunction against its violation. He is entitled to sue if this section

---

[2] 1 Callmann, Unfair Competition and Trade-Marks (2 ed.) § 27, et seq.; Clark, *Statutory Restrictions on Selling Below Cost*, 11 Vanderbilt L. Rev. 105; Annotations, 118 A. L. R. 506 and 128 A. L. R. 1126.

[3] State v. Duluth Board of Trade, 107 Minn. 506, 121 N. W. 395, 23 L.R.A. (N.S.) 1260; N. P. Ry. Co. v. United States, 356 U. S. 1, 78 S. Ct. 514, 2 L. ed. (2d) 545; Apex Hosiery Co. v. Leader, 310 U. S. 469, 60 S. Ct. 982, 84 L. ed. 1311, 128 A. L. R. 1044.

[4] Minn. St. 623.01, et seq.; 15 USCA, § 1, et seq.

[5] See, Standard Fashion Co. v. Magrane-Houston Co. 258 U. S. 346, 356, 42 S. Ct. 360, 362, 66 L. ed. 653, 657; Federal Trade Comm. v. Raladam Co. 283 U. S. 643, 647, 51 S. Ct. 587, 589, 75 L. ed. 1324, 1329; Fashion Guild v. Federal Trade Comm. 312 U. S. 457, 466, 61 S. Ct. 703, 707, 85 L. ed. 949, 953; Federal Trade Comm. v. Raladam Co. 316 U. S. 149, 152, 62 S. Ct. 966, 968, 86 L. ed. 1336, 1340; Federal Trade Comm. v. Morton Salt Co. 334 U. S. 37, 68 S. Ct. 822, 92 L. ed. 1196, 1 A. L. R. (2d) 260; People v. Pay Less Drug Store, 25 Cal. (2d) 108, 153 P. (2d) 9.

"is about to be violated," and is authorized to secure "injunctive relief in any court of competent jurisdiction against any * * * threatened violation." Unless this court is prepared to declare these provisions unconstitutional, it cannot properly refuse to give effect to them.

Thus, the issue here is whether the evidence in the record will permit the trial court to find either a prima facie threatened or an actual violation of the statute. I think the record shows both.

The trial court has found, and this court assumes, that the defendant sold, offered, and advertised for sale a number of commodities at less than cost. It also appears from the evidence, and is not disputed, that defendant offered to give away free an automobile, as well as other items of value. In order to secure any of these valuable giveaways, it was necessary to fill out an entry blank listing name, address, and phone, and to deposit this at one of defendant's stores. It appears that the recipients of the free awards were then to be determined by lot or drawing. All this occurred in an admittedly competitive situation.

The majority opinion says that these facts are not sufficient to make a prima facie showing of violation or threatened violation of the statute. It holds that "a simple showing of *threatened injury to a competitor* by sales below cost without any showing of the purpose or effect of such sale * * *" (italics supplied) does not justify injunctive relief. This holding is supported by a discussion which suggests that the commissioner's affidavits fail to show that any specific competitor was actually injured.

But actual injury to a competitor or to competition is not required for the issuance of an injunction relating to this act. Section 362.14 directs the issuance of an injunction to prevent any "threatened violation" of § 325.04. If sales below cost and giveaways actually injure a competitor, they violate the act. If they threaten injury to a competitor, they obviously threaten a violation of the act. The refusal of the majority to hold that "threatened injury to a competitor by sales below cost" justifies injunctive relief directly contravenes the mandate of the statutes as written by the legislature.

Furthermore, I believe that the showing made here of sales below cost and giveaways which occur in a competitive situation and threaten

injury to a competitor is sufficient to support an inference that such consequences were the purpose of the acts. This makes a prima facie showing that an actual violation of the act has occurred, which is sufficient to justify injunctive relief in any view of the matter.

It is elementary and universally recognized in law that all men are presumed to intend the natural and probable consequences of their acts.[6] Thus, if a man were to shoot a gun into a crowd of people he certainly would not be heard to deny that he intended to injure someone. The mere fact that it could not be established that he was aiming at a specified individual would hardly be a defense if he were charged with assault with a deadly weapon.

In the situation at bar, defendant operates a number of retail grocery stores geographically scattered throughout a large metropolitan area which is highly competitive and in which there are other stores, both independents and chains, in competition with defendant's stores. Defendant has undertaken to offer for sale and advertise publicly a number of items at a price below cost over an extended period of time, and concomitantly to offer, advertise, and give away a number of valuable items including an automobile. In these circumstances, it is too obvious to admit of dispute that defendant's purpose was to draw business to itself and away from its competitors by the acts mentioned.

Defendant does not deny this, but argues that this is merely legitimate competition and therefore does not constitute "injury to a competitor" within the meaning of the statute. Defendant asserts in an affidavit that "[t]he essence of competition is a striving for business and there can be no competition unless one competitor is successful in diverting trade from another competitor."

It is certainly true that one aspect of competition is seeking to divert to one's self the trade of a competitor. It does not follow, however, that this does not constitute injury to a competitor. Indeed, no proposi-

---

[6]Paulson v. Scott, 260 Wis. 141, 50 N. W. (2d) 376, 31 A. L. R. (2d) 706; Black v. Taylor, 128 Colo. 449, 264 P. (2d) 502; Lankford v. Tombari, 35 Wash. (2d) 412, 213 P. (2d) 627, 19 A. L. R. (2d) 462; Metropolitan Life Ins. Co. v. Henkel (4 Cir.) 234 F. (2d) 69; Sears, Roebuck & Co. v. American Plumbing & Supply Co. (E. D. Wis.) 19 F. R. D. 334.

tion is better established in this field of law than that diversion of trade from a competitor is an injury for which the law affords a remedy if the means used are improper.[7] The crucial question is not whether the diversion of trade from a competitor is an injury to a competitor, since this is too obvious and well established to admit of rational dispute, but whether or not the means utilized to divert trade from a competitor is legally permissible. Competition is sanctioned and encouraged, but certain competitive weapons are prohibited.

Under § 325.04 selling or advertising any commodity at less than cost or giving away or advertising the intent to give away any commodity is not a legal means of diverting trade from a competitor. In simple terms, below-cost selling and giveaways are outlawed as competitive business weapons. In the technical language of the law, the statute says that the acts must have either "the purpose" or "the effect" of injuring a competitor. This leaves open a number of possible situations in which merely selling an item below cost or giving an item away would not be illegal. Various possibilities suggest themselves. Casually making a donation or gift or selling some item at a price which proved to be less than cost would not be improper under this statute without more. However, this is not all that is shown in the present case. Here there is a widely advertised offer to give away very valuable items and to sell other items at less than cost. These offers are made over a long period of time and coupled with a number of devices, such as the necessity of filling out coupons and depositing them in one of defendant's numerous stores, all of which clearly show that these practices are devices deliberately and intentionally undertaken for no other purpose than to divert trade from competitors to de-

---

[7]Bigelow v. RKO Radio Pictures, Inc. 327 U. S. 251, 66 S. Ct. 574, 90 L. ed. 652; Maryland Baking Co. v. Federal Trade Comm. (4 Cir.) 243 F. (2d) 716; Atlas Bldg. Products Co. v. Diamond Block & Gravel Co. (10 Cir.) 269 F. (2d) 950; Sun Cosmetic Shoppe, Inc. v. Elizabeth Arden Sales Corp. (2 Cir.) 178 F. (2d) 150, 13 A. L. R. (2d) 358; E. B. Muller & Co. v. Federal Trade Comm. (6 Cir.) 142 F. (2d) 511; G. & C. Merriam Co. v. Saalfield (6 Cir.) 198 F. 369; Restatement, Torts, § 746; also see, Federal Trade Comm. v. Anheuser-Busch, Inc. 363 U. S. 536, 80 S. Ct. 1267, 4 L. ed. (2d) 1385.

fendant. Defendant plainly is intentionally using these devices as competitive weapons.

Considering the practice of giving away free merchandise by itself, it is almost self-evident that this ordinarily has and can have no other purpose than that of diverting trade from competitors. There is certainly no social or economic purpose served by free giveaways. If a merchant desires to donate to charity, he will not choose a recipient by lot from among those who come to his store and register. Indeed, it is not claimed here that there was any charitable intent. However, if the giving away of such expensive items as an automobile has an economic purpose, it can be only to make a greater profit by diverting trade from competitors.

It is difficult to see what additional evidence the court would require in order to show defendant's purpose. If the trial court is to be permitted to draw reasonable inferences from the evidence and to utilize its commonsense and knowledge of human nature, which it claims to have done, it was certainly justified in finding that the purpose of the acts admittedly done here was to divert trade from competitors to defendant, which is to injure a competitor.

If this court requires proof of a purpose or effect of injury to a specifically identified competitor to show violation, it will not only have vitiated the statute but have amended it without legislative authority. It may be assumed that no defendant will voluntarily admit a purpose of injuring any particular competitor, much less of destroying competition. If an inference of purpose to injure a competitor cannot be drawn from the commission of acts in a competitive situation which will have the natural and probable consequences of injuring a competitor, then the only admissible proof will be actual injury to a specified competitor. To hold this, however, is to amend the statute by eliminating from it the alternative of "purpose."

Further, to impose such a requirement of proof is to erect a nearly insuperable barrier to enforcement in many, if not most, situations. It is difficult to conceive of the character of evidence that might satisfy a court that in a situation with many competitive retail outlets, such as those involved here, any practice has had the effect of diverting a certain amount of patronage from a particular competitor

to defendant. Even though it be shown that the business of the defendant increased and that the business of specified competitors decreased, any competent defendant's advocate could think of dozens of reasons for this, other than the act that was attacked. Just how the below-cost sales and giveaways are to be isolated as causative factors in such a situation is not suggested and certainly is not clear.[8]

The majority opinion relies upon State, by Clark, v. Wolkoff, 250 Minn. 504, 85 N. W. (2d) 401, to support its position. But it is significant that the legislature has amended § 325.04 since that case arose in order to change the rule of that case.[9] That case held that to establish violation of the statute it was necessary to show that the challenged act had the dual purpose or effect of both injuring competitors and destroying competition. In that case this court sustained the finding of the trial court that the evidence did not show such dual purpose or effect. Under the present statute violation is established by showing merely a purpose to injure a competitor. As a competitor is injured by having trade diverted from him, the statute is violated if the below-cost sales or giveaways are intentionally employed as competitive weapons.

The few precedents that appear relevant support this view. In Federal Trade Comm. v. Raladam Co. 316 U. S. 149, 62 S. Ct. 966, 86 L. ed. 1336, the commission found that Raladam had made misleading and deceptive statements to further the sale of its product, that it had many competitors, and that its unfair methods of competition tended to divert trade to it from competitors. The order was at-

---

[8]In Mead v. Anton, 33 Wash. (2d) 741, 756, 207 P. (2d) 227, 235, 10 A. L. R. (2d) 588, 601, the court makes the cogent observation, "it is a matter of common knowledge that the extent of damage to one business by competition from another of the same character, is extremely difficult to establish by definite evidence."

[9]L. 1957, c. 822. Whether or not the legislature knew of the pendency of the Wolkoff case is immaterial. The legislature plainly intended to and did change the conjunctive requirement on which the Wolkoff decision is based to a disjunctive. Consequently, the Wolkoff case cannot logically serve as authority for reaching the same result under the statute as amended.

tacked, and reversed by the court of appeals, on the ground of a failure to show any injury or tendency to injure the business of any competitor. The United States Supreme Court reversed the court of appeals and directed that the commission order be affirmed, saying (316 U. S. 152, 62 S. Ct. 968, 86 L. ed. 1340):

"It is not necessary that the evidence show specifically that losses to any particular trader or traders arise from Raladam's success in capturing part of the market. One of the objects of the Act creating the Federal Trade Commission was to prevent potential injury by stopping unfair methods of competition in their incipiency. * * * And when the Commission finds, as it did here, that misleading and deceptive statements were made with reference to the quality of merchandise in active competition with other merchandise, it is also authorized to infer that trade will be diverted from competitors who do not engage in such 'unfair methods.' "

As it is an obvious inference that unfair methods of competition will divert trade from competitors if pursued, it is equally obvious that the only purpose for their adoption must be to divert trade. This has been held by the courts of Colorado and California. Dikeou v. Food Distributors Assn. 107 Colo. 38, 108 P. (2d) 529, was also an injunction proceeding under the corresponding Colorado statute. An injunction was entered by the trial court and defendant appealed, contending, inter alia, that there was no evidence of intent to injure competitors. The Supreme Court of Colorado affirmed the decree saying (107 Colo. 48, 108 P. [2d] 534): "It may be presumed in a civil action that the natural and probable consequences of the act were intended by the actor." It said that intent was evidenced by defendants' activity in advertising the price reductions, by the fact that selling below cost clearly may result in destroying competition, and by the effect of such practices on other retailers.

The California statute against below-cost sales provided that proof of sales below cost and of an injurious effect is "presumptive evidence of the purpose or intent to injure competitors or destroy competition." Business and Professions Code of California, § 17071. The California Supreme Court, in affirming an injunction issued under this provision, said:

"* * * The Legislature merely enacted into law what is common in human experience, that when a person causes injury by his acts he should be deemed to intend such consequences unless he can excuse or explain his conduct by facts showing that he had an innocent intent."[10]

Since the majority opinion proceeds on the assumption that the acts involved here "threatened injury to a competitor," it was certainly open to the trial court to infer that this was their purpose. In fact, defendant does not argue here that it had any other purpose than to divert trade to itself from competitors by the practices involved. In the circumstances disclosed by this record, it is not possible rationally to infer any other purpose.

Since it is clear that defendant advertised and offered articles below cost and giveaways, there was an actual violation of the statute established by this inferential, but obvious, purpose. It is not open to dispute that the trial court was justified in issuing a temporary injunction upon such a showing of actual violation of the statute.

The preliminary injunction was, therefore, not only justified but required by a prima facie showing of both a threatened and an actual violation of the statute. The threatened violation of the statute was established by the probability that the challenged acts would injure competitors. The actual violation was established by the inescapable inference that the practices were adopted as competitive weapons, which is to say for the purpose of injuring competitors by diverting trade from them through the use of the challenged practices. This is precisely what the legislature sought to prevent. This court has no right to frustrate the legislative object unless it conflicts with some constitutional principle.

MURPHY, JUSTICE (dissenting).

I concur with the dissenting opinion of Mr. Justice Loevinger.

---

[10]People v. Pay Less Drug Store, 25 Cal. (2d) 108, 114, 153 P. (2d) 9, 13. Also see, Mering v. Yolo Grocery & Meat Market (Cal. App.) 127 P. (2d) 985; People v. Gordon, 105 Cal. App. (2d) 711, 234 P. (2d) 287.