TWIN CITY CANDY AND TOBACCO COMPANY, INC. v.
A. WEISMAN COMPANY.
MINNESOTA CANDY & TOBACCO DISTRIBUTORS
ASSOCIATION v. SAME.

149 N. W. (2d) 698.

March 20, 1967—Nos. 40,287, 40,188.

*Joseph Robbie* and *Peter J. Lindberg,* for appellants.

*Maslon, Kaplan, Edelman, Joseph & Borman, Hyman Edelman,* and *Ralph Strangis,* for respondent.

OTIS, JUSTICE.

Two actions against the same defendant have been consolidated on appeal. One has been brought by a nonprofit trade association to enjoin violations of the Minnesota Unfair Cigarette Sales Act, and the other, by a wholesale distributor, to obtain an injunction and damages.

■ The trial court held that the trade association, Minnesota Candy & Tobacco Distributors Association, was without standing to bring the action, and we are asked to determine the propriety of that order. Because the issues raised and the relief sought in the action brought by Twin City Candy and Tobacco Company, Inc., are decisive of the

claims of the trade association, we hold that the association's standing does not present a question which it is necessary to review, and we therefore decline to do so.

■ With respect to the action brought by Twin City Candy and Tobacco Company, Inc., the trial court initially granted a temporary injunction. This prompted defendant to move for an order declaring unconstitutional the Minnesota Unfair Cigarette Sales Act (hereinafter referred to as the Cigarette Act). The trial court granted the motion, treating it as one for summary judgment. Plaintiff appeals from the judgment of dismissal which was thereupon entered.

Plaintiff and defendant are wholesale distributors of cigarettes in the Twin Cities area. During the summer of 1965 one of defendant's salesmen approached a customer of plaintiff's and offered to sell him cigarettes at 5¢ a carton less than the actual invoice cost. Following these overtures defendant did sell plaintiff's customer 454 cartons below cost, which plaintiff alleges resulted in a direct loss of profits amounting to $1,212.18. Plaintiff further alleges that these sales were in willful and deliberate violation of the Cigarette Act and, if repeated, will destroy plaintiff's business. Accordingly, plaintiff seeks to enjoin defendant from further violations and in addition prays for damages.

The pertinent provisions of the Minnesota Unfair Cigarette Sales Act are as follows:

Minn. St. 325.64. "The legislature finds that unfair, dishonest and fraudulent business practices exist in transactions involving the sale of, or offer to sell, cigarettes in the wholesale and retail trades in this state and are demoralizing and disorganizing the said trades.

"Offering for sale, or *sale of cigarettes below cost in the wholesale and retail trade is declared by the legislature to have the intent or effect of injuring a competitor*, destroying or lessening competition, and is deemed an unfair and deceptive business practice and an unfair method of competition.

"Such practices affect collection of taxes and license fees imposed on distributors, wholesalers, retailers, and persons engaged in the sale of cigarettes.

"It is hereby declared to be the policy of the state of Minnesota and the purpose of sections 325.64 to 325.76 to protect the public by prohibiting such sales." (Italics supplied.)

§ 325.67. "Subdivision 1. It shall be unlawful for any wholesaler or retailer to offer to sell, or sell, at wholesale or retail, cigarettes at less than cost to such wholesaler or retailer, as the case may be, as defined in sections 325.64 to 325.76. Any wholesaler or retailer who violates the provisions of this section shall be guilty of *a misdemeanor*.

"Subd. 2. Evidence of advertisement, offering to sell or sale of cigarettes by any wholesaler or retailer at less than cost to him as defined by sections 325.64 to 325.76 shall be evidence of a violation of sections 325.64 to 325.76 *in civil cases*." (Italics supplied.)

§ 325.70. "The provisions of sections 325.64 to 325.76 shall not apply to a sale at wholesale or a sale at retail made (a) in an isolated transaction; (b) where cigarettes are offered for sale, or sold in a bona fide clearance sale for the purpose of discontinuing trade in such cigarettes and said offer to sell, or sale shall state the reason thereof and the quantity of such cigarettes offered for sale, or to be sold; (c) where cigarettes are offered for sale, or sold as imperfect or damaged, and said offer to sell, or sale shall state the reason therefor and the quantity of such cigarettes offered for sale, or to be sold."

§ 325.71. "Subdivision 1. Any wholesaler may advertise, offer to sell or sell cigarettes at a price made in good faith to meet the price of a competitor who is selling the same article at the cost to the competing wholesaler as defined by sections 325.64 to 325.76."

Under § 325.74, any person injured or threatened with injury by a violation of the act may bring an action to enjoin the violation. If any part of the act is held unconstitutional the remainder is deemed severable. § 325.76.

The issue before this court is whether the failure to require proof that sales at less than cost are with the intent or effect of injuring competition renders the statute invalid. We have concluded that it does.[1]

---

[1] The provisions of the Cigarette Act are significantly different from those

In so holding we have in mind the principles that laws are presumed to be constitutional unless their invalidity is demonstrated beyond a reasonable doubt, and that courts shall exercise with restraint their power to strike down legislation. Dimke v. Finke, 209 Minn. 29, 32, 295 N. W. 75, 78. Nevertheless we are persuaded that considerations of policy, our own precedents, and the overwhelming weight of authority compel a holding that the statute is invalid.

If drafted with appropriate constitutional safeguards it is no longer open to question that legislation prohibiting sales below cost is a proper exercise of the state's police power.[2] Virtually every state has adopted a "fair trade" law in one form or another.[3] The practice of advertising and selling "loss leaders," or what have been sometimes described as "mis-leaders,"[4] has been found by legislatures to result in financially strong companies driving weaker competitors out of business, thereby opening the door to the monopolies which the law is designed to prevent. The charge is made that sales at less than cost by chain stores result in regional discrimination because the loss to the vendor in one community must be recouped by excessive charges in another. A further justification for the statute is the likelihood of deception arising from the public's notion that if one item is sold below cost others will be equally cheap, whereas they may actually be exorbitantly high.[5] Whether these and other arguments which center on

---

of the general statute governing unfair discrimination and competition contained in Minn. St. 325.04. That statute prohibits sales at less than cost "for the purpose or with the effect of injuring a competitor or destroying competition."

[2] Fournier v. Troianello, 332 Mass. 636, 639, 127 N. E. (2d) 167, 170; Wholesale Tobacco Dealers Bureau v. National C. & T. Co. 11 Cal. (2d) 634, 658, 82 P. (2d) 3, 17, 118 A. L. R. 486, 502; 2 CCH, Trade Reg. Rep. par. 6629.

[3] 2 CCH, Trade Reg. Rep. pars. 6623, 6625; Simonetti, Inc. v. State ex rel. Gallion, 272 Ala. 398, 132 So. (2d) 252, 263.

[4] Louisiana Wholesale Distributors Assn. v. Rosenzweig, 214 La. 1, 5, 36 So. (2d) 403, 404.

[5] Louisiana Wholesale Distributors Assn. v. Rosenzweig, 214 La. 1, 6, 36 So. (2d) 403, 404.

protecting the consumer are valid, or whether the statutes are essentially designed to protect business from cutthroat competition harmful to it but beneficial to the public, we need not decide.[6] The considerations recited are sufficient to support the validity of "below cost" statutes, if the constitutional rights of vendors are adequately protected.

■ A basic assumption in considering this question is the premise that vendors have a right to deal with their property as they wish and that freedom to contract is a liberty which may not be circumscribed except for compelling reasons.[7] Price fixing has been uniformly held to be a denial of due process except where it promotes the general welfare and is thus a subject of the state's police power.[8] To regulate prices lawfully there must be a substantial relation between the measures taken and the evil to be suppressed.[9] The question then is whether a statute such as ours may create a conclusive presumption that *all* sales of cigarettes below cost, not within one of the stated exceptions, are with the intent or effect of injuring a competitor.

Under our Cigarette Act violators are afforded no opportunity to show that a sale is with innocent intent or without predatory effect. This defect may not, in our opinion, be corrected by a mere recitation in the preamble of the statute which amounts to an irrebuttable finding of fact. We have indicated in Berg v. Berg, 201 Minn. 179,

---

[6] Englebrecht v. Day, 201 Okla. 585, 587, 208 P. (2d) 538, 540.

[7] Fairmont Creamery Co. v. Minnesota, 274 U. S. 1, 8, 47 S. Ct. 506, 508, 71 L. ed. 893, 896; State ex rel. English v. Ruback, 135 Neb. 335, 339, 281 N. W. 607, 609; State v. Langley, 53 Wyo. 332, 84 P. (2d) 767; State v. Packard-Bamberger & Co. Inc. 123 N. J. L. 180, 183, 8 A. (2d) 291, 293; Commonwealth v. Zasloff, 338 Pa. 457, 459, 13 A. (2d) 67, 69, 128 A. L. R. 1120.

[8] Avella v. Almac's Inc. (R. I.) 211 A. (2d) 665, 671; State v. Lelyo, 3 Conn. Cir. 484, 217 A. (2d) 419, 421; Clark, *Statutory Restrictions on Selling Below Cost,* 11 Vanderbilt L. Rev. 105, 107; State v. Langley, 53 Wyo. 332, 354, 84 P. (2d) 767, 775.

[9] Nebbia v. New York, 291 U. S. 502, 525, 54 S. Ct. 505, 510, 78 L. ed. 940, 950; State v. Lelyo, 3 Conn. Cir. 484, 217 A. (2d) 419, 421; Commonwealth v. Zasloff, 338 Pa. 457, 460, 13 A. (2d) 67, 69, 128 A. L. R. 1120.

189, 275 N. W. 836, 842, that the preamble is not actually a part of the statute. Beyond that, however, to the extent the recitations in § 325.64 constitute a conclusive presumption, they are unjustified and invalid. Even the legislature does not have the power to declare conclusively what shall be evidence if it is contrary to fact. A law which closes a litigant's mouth in court is as bad as a law which deprives him of access to it. Juster Bros. Inc. v. Christgau, 214 Minn. 108, 117, 7 N. W. (2d) 501, 507.

By the language of § 325.64, the legislature has not only declared that the sale of cigarettes below cost is with predatory intent or effect but in addition finds that it hinders the collection of taxes and fees and otherwise violates public policy. Notwithstanding this sweeping indictment, the act specifically exempts at least four kinds of transactions—isolated sales, clearance sales, the sale of damaged goods, and those designed to compete with the legal sales of competitors. No opportunity is afforded to show that any other transaction is either innocently consummated or has no injurious effect on competitors or the public.

Without attempting to catalogue exhaustively all of the sales which are not exempt under our statute but may nonetheless be innocent, it is enough to say that no accommodation is made for the vendor who in good faith is overstocked and requires capital for other merchandise but does not intend to discontinue permanently the sale of cigarettes. In addition, there is no opportunity for a vendor to show he mistakenly sold below cost to meet what he honestly believed was the legal price of his competitors, or that he innocently erred in arriving at his own cost figures. Under our statute all of these hypothetical sales are subject to criminal and civil sanctions without permitting the defendant to prove they occurred without predatory intent or without any harmful effect on legitimate competition. Under such circumstances, we hold in accordance with the weight of authority that the statute denies the defendant due process of law under the Fourteenth Amendment and is invalid in its entirety.[10]

---

[10] The remainder of the act is not saved by the provisions of Minn. St. 645.20 since, if the civil sanctions are invalid, clearly the criminal sanctions

■ No consideration of the law governing price fixing is complete without a discussion of Fairmont Creamery Co. v. Minnesota, 274 U. S. 1, 47 S. Ct. 506, 71 L. ed. 893, and Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940. In the Fairmont case the United States Supreme Court held that G. S. 1923, § 3907, prohibiting price discrimination in the purchase of creamery products, was unconstitutional because it omitted as an element of the offense predatory purpose. Seven years later, without referring to Fairmont, the United States Supreme Court in the Nebbia case affirmed a conviction for selling milk below the price fixed by authority of a New York statute. The court noted that the correlative rights of the individual to contract and the state to regulate the use of his property are always in collision and held that the guaranty of due process demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. The court concluded that legislatures have a right to curb "unrestrained and harmful competition" if the measures are not arbitrary or discriminatory and if, without such a statute, harm to both the producer and consumer is threatened. 291 U. S. 537, 54 S. Ct. 516, 78 L. ed. 957.

Thereafter, a three-judge Federal district court held the Minnesota Unfair Trade Practices Act unconstitutional, citing both Fairmont and Nebbia. Great A. & P. Tea Co. v. Ervin (D. Minn.) 23 F. Supp. 70. That statute prohibited the sale of goods below a specified markup and made such sales prima facie evidence of predatory intent. The court stated (23 F. Supp. 80):

"* * * If all profitless sales of goods were always or were even usually made by merchants for the purpose of injuring their competitors so that it could truly be said that such sales had, in and of themselves, a sinister significance, we would not hesitate to say that the Legislature was within its rights in creating a presumption of sale below cost with wrongful intent. So far as we are aware, however—and

must fall. See, Carter v. Carter Coal Co. 298 U. S. 238, 313, 56 S. Ct. 855, 873, 80 L. ed. 1160, 1190.

there is in the record no evidence to justify a contrary conclusion—such sales have not been regarded as indicating an intent to do evil. There are many reasons, aside from a desire to injure competitors, which might induce a merchant to make profitless sales of goods. The statute itself recognizes the right to meet local competition. A sudden necessity of paying claims of importunate creditors might furnish a reason for sales at less than cost plus overhead. Other similar illustrations are not wanting."

With the single exception of Iowa, no appellate court decision coming to our attention has sustained the constitutionality of a statute prohibiting sales below cost where there is no provision for predatory intent or effect. State v. Packard-Bamberger & Co. Inc. 123 N. J. L. 180, 8 A. (2d) 291; Commonwealth v. Zasloff, 338 Pa. 457, 13 A. (2d) 67; Wiley v. Sampson-Ripley Co. 151 Maine 400, 120 A. (2d) 289; Opinion of the Justices, 152 Maine 458, 132 A. (2d) 47; State ex rel. Anderson v. Fleming Co. 184 Kan. 674, 339 P. (2d) 12; 1 Callmann, Unfair Competition and Trade-Marks (2 ed.) § 27.3(a).

Turning to our own decisions, we have recently made it clear that statutes prohibiting sales below cost would be held unconstitutional if no specific culpable purpose or effect were required, State, by Clark, v. Wolkoff, 250 Minn. 504, 507, 85 N. W. (2d) 401, 404, or if the "mere sale below cost" were a violation of the statute. State, by Clark, v. Applebaums Food Markets, Inc. 259 Minn. 209, 214, 106 N. W. (2d) 896, 900.

State v. McMasters, 204 Minn. 438, 283 N. W. 767, sustained a statute fixing minimum prices in the barber trade. Citing Nebbia, this court held that under its police power the state had a right to fix prices even where the main objective is the welfare of the trade rather than the public interest. Without stating its reasons, the court simply held that it chose to follow the majority opinions in decisions rendered by the supreme courts of Louisiana and Oklahoma.

McElhone v. Geror, 207 Minn. 580, 292 N. W. 414, upheld the validity of the Minnesota Unfair Trade Practices Act after it had been

amended to meet the constitutional objections sustained by the Federal court in the A. & P. case. The statute as amended prohibited the sale of goods below cost "for the purpose or with the effect of injuring competitors and destroying competition." The court cited Nebbia and distinguished Fairmont which, it said, dealt with a statute not requiring wrongful intent. Significantly, Commonwealth v. Zasloff, 137 Pa. Super. 96, 8 A. (2d) 801 (affirmed in Commonwealth v. Zasloff, *supra*), and State v. Packard-Bamberger & Co. Inc. *supra*, were distinguished as dealing with statutes where predatory intent or effect were not necessary.

Plaintiff argues that the Minnesota case which governs is State v. Lanesboro Produce & Hatchery Co. 221 Minn. 246, 21 N. W. (2d) 792, 163 A. L. R. 1108, in which a divided court sustained a statute prohibiting discrimination in the purchase of farm products without reference to intent or effect. The court was of the opinion that Fairmont had been overruled by Nebbia and held that the failure to include intent to destroy competition as an element of the offense did not deny due process. Although the vitality of Lanesboro has been somewhat diluted by our subsequent decisions relying on Fairmont, there are other reasons for holding that it does not govern our decision in the instant case. In the first place, the court prefaced its consideration of the constitutional problem by stating (221 Minn. 249, 21 N. W. [2d] 793):

"* * * Only one question, therefore, is actually presented to this court, and that is whether the statute in question is so vague, indefinite, and uncertain as to deny due process of law."

Unlike Lanesboro, the issue before us now is whether an innocent sale, or one which does not affect competition, may constitutionally be prohibited. Equally important is the fact that by the very nature of the activity prohibited in Lanesboro there was little room for honest mistake or inconsequential effect. The statute there under consideration dealt with the patently unfair practice of paying different prices for the same commodity in different localities, making allowance only for the actual cost of transportation. We think the dissimilarities in the conduct prohibited, the mischief to be remedied, and the issues ac-

tually presented for determination are such as to render Lanesboro inapplicable to the case at hand.

Neither State, by Clark, v. Wolkoff, *supra*, nor State, by Clark, v. Applebaums Food Markets, Inc. *supra,* dealt with the constitutionality of statutes prohibiting sales below cost. There, discussion of the constitutional question was incidental to a determination of whether the facts justified the decision of the trial court. Nevertheless, both opinions rely on Fairmont, and the Wolkoff case in addition cites not only Packard-Bamberger and Commonwealth v. Zasloff, 137 Pa. Super. 96, 8 A. (2d) 801, but in addition alludes to May's Drug Stores v. State Tax Comm. 242 Iowa 319, 45 N. W. (2d) 245, as contrary authority. In both Wolkoff and Applebaums there were found to be sales below cost, but we held that the evidence did not compel in the one case, or permit in the other, a finding that there was predatory intent or substantial damage as a result of such sales. In Wolkoff we stressed the fact that no violation of the statute occurred if the defendant believed in good faith his sale below cost was at a price reflecting the legal cost of his competitors. We also observed that under such circumstances sales designed only to meet the price of competitors could not have the effect as to them of injuring competition.

Finally, plaintiff understandably relies strongly on the May's Drug Stores decision. The court there sustained the validity of the Iowa Unfair Cigarette Sales Act which prohibited sales below cost without a requirement of predatory intent or effect. We think the court put its finger on the legislature's reason for the omission when it said (242 Iowa 334, 45 N. W. [2d] 253):

"* * * The legislative finding of the evils attributable to below-cost selling, the frequent connection between sales below cost and injury to competitors and free competition, *and the difficulty of proving that connection in each case,* justifies the flat prohibition without requiring a judicial finding that each particular below-cost sale has the effect or result of injuring a competitor or destroying competition." (Italics supplied.)

Nevertheless, we suggest that the opinion recognized the force of a

principle articulated by the Supreme Court in Tyson & Brother v. Banton, 273 U. S. 418, 443, 47 S. Ct. 426, 432, 71 L. ed. 718, 728, which held:

"* * * It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers also may be caught."

The court observed (242 Iowa 334, 45 N. W. [2d] 253):

"* * * The legislature finds that, *ordinarily,* sales below cost injure competitors and destroy competition. That is sufficient justification for the prohibition of *all* such sales—*at least in the absence of some showing that a substantial volume of sales below cost by dealers would not have such a result."* (Italics supplied.)

It is not clear whether it was intended that the showing referred to should be made to the legislature or to the court. If the latter, it would seem to be a judicial escape hatch which the court reads into the statute to sustain its validity. In any event we do not subscribe to the view that all sales below cost may be constitutionally prohibited regardless of whether the intent is evil or innocent, or the effect harmless or predatory.

■ Except as to criminal prosecutions where a defendant constitutionally enjoys a presumption of innocence and the burden is on the state,[11] we suggest that the difficulty of proof to which the Iowa

[11] State ex rel. Geiselhart v. Tahash, 274 Minn. 464, 144 N. W. (2d) 354; State v. Edwards, 269 Minn. 343, 348, 130 N. W. (2d) 623, 626; State v. Kelly, 218 Minn. 247, 15 N. W. (2d) 554, 162 A. L. R. 477; United States v. Romano, 382 U. S. 136, 86 S. Ct. 279, 15 L. ed. (2d) 210; Tot v. United States, 319 U. S. 463, 469, 63 S. Ct. 1241, 1245, 87 L. ed. 1519, 1525; Great A. & P. Tea Co. v. Ervin (D. Minn.) 23 F. Supp. 70, 82; Mott's Super Markets, Inc. v. Frassinelli, 148 Conn. 481, 491, 172 A. (2d) 381, 386; Wiley v. Sampson-Ripley Co. 151 Maine 400, 120 A. (2d) 289. The inclusion of "intent" in statutes of this kind is clearly for the purpose of rendering them constitutional with respect to criminal prosecutions. Otherwise intent seems to be of no particular significance. Intent without possible harm will seldom lead to a prosecution, and harm without intent

court alluded may be overcome constitutionally by the adoption of a statute which makes a sale below cost *prima facie* evidence of predatory intent or effect. While there is a division of opinion with respect to the validity of such a provision, the weight of authority and, we believe, the better reasoned decisions hold there is no constitutional impediment in requiring that in civil litigation the vendor has the burden of proving his below-cost sales were made without predatory intent or effect.[12]

However, for the reasons discussed, the Minnesota Unfair Cigarette Sales Act, §§ 325.64 to 325.76, as presently drafted cannot be sustained.

Affirmed.

---

is ordinarily justiciable only in civil litigation where all that is sought is injunctive relief.

[12] People v. Pay Less Drug Store, 25 Cal. (2d) 108, 114, 153 P. (2d) 9, 13; Perkins v. King Soopers, 122 Colo. 263, 221 P. (2d) 343; Davey Bros. Inc. v. Stop & Shop, Inc. 351 Mass. 59, 62, 217 N. E. (2d) 751, 753; Borden Co. v. Thomason (Mo.) 353 S. W. (2d) 735, 753; Rocky Mountain Wholesale Co. v. Ponca Wholesale Merc. Co. 68 N. Mex. 228, 235, 360 P. (2d) 643, 647; State v. Ross, 259 Wis. 379, 385, 48 N. W. (2d) 460, 464; LaRue, *Pitfalls for Price Competitors: State and Federal Restrictions on Below Cost or Unreasonably Low Prices,* 15 Western Res. L. Rev. 35, 46, note 56; Annotation, 162 A. L. R. 495, 532.