Larry CLAUDE, et al., Respondents (C0–93–564), Appellants (C5–93–642),

v.

James R. COLLINS, Respondent,

Ray Sogard, et al., Appellants (C0–93–564), Defendants (C5–93–642),

Steve Saban, Respondent.

Nos. C0–93–564, C5–93–642.

Court of Appeals of Minnesota.

Oct. 26, 1993.

Review Granted Dec. 27, 1993.

**454**

Roger J. Aronson, Rischmiller, Knippel and Aronson, Minneapolis, for Larry Claude, et al.

James J. Thomson, John M. LeFevre, Holmes & Graven, Chartered, Minneapolis, for James R. Collins.

Richard A. Beens, Felhaber, Larson, Fenlon & Vogt, Minneapolis, for Ray Sogard, et al.

Steve Saban, pro se.

## OPINION

SCHUMACHER, Judge.

Respondent James R. Collins and appellants Ray Sogard and Frank Modich challenge the trial court's finding that they violated the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1990). Respondents Larry Claude, George Galatz, and Ed Jylha claim the trial court incorrectly calculated the number of violations of the law and further erred by failing to remove Collins, Sogard, Modich, and respondent Steven Saban from office. We affirm.

## FACTS

Collins, Sogard, Saban, and Modich (councilmembers) are members of the Hibbing City Council. Collins is also mayor of the city. They have served the following terms in office:

Collins 1973–76, 1981–82, 1989–present
Sogard 1991–present
Saban 1979–present
Modich 1991–present

Claude, Galatz, and Jylha (residents) live within the City of Hibbing. Claude and Jylha are presidents of American Federation of State, County, and Municipal Employees locals representing city employees. Their union activities have led to political conflict with councilmembers.

Residents brought this suit in response to five gatherings of a quorum of the Hibbing City Council that allegedly violated the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1990). Those gatherings and the relevant attendees are:

| | |
|---|---|
| January 2, 1991: | Collins, Sogard, Saban, and Modich |
| February 7, 1991: | Collins, Sogard, and Modich |
| February 27, 1991: | Collins, Sogard, Saban, and Modich |
| March 18, 1991: | Collins, Sogard, Saban, and Modich |
| April 5, 1991: | Collins, Sogard, Saban, and Modich |

Two other members of the Hibbing City Council, Gene Nicollelli and Ray Pierce, were also named in the original complaint. Nicollelli and Pierce admitted violating the law and were fined $200 each by the trial court. In return, they were released from the action.

Sogard had some prior experience with the Minnesota Open Meeting Law through his work for the Hibbing Housing and Redevelopment Authority and his attendance at a League of Minnesota Cities training session. Nonetheless, the trial court found that the violation caused by his attendance at the January 2 gathering was "unintentional" since it came one day after his election to office. He was not sanctioned for attending this gathering.

Modich had no previous experience with the Minnesota Open Meeting Law. The trial court found that the violations caused by his attendance at the January 2, February 7, and February 27 gatherings were "unintentional" since the court believed Modich should have the benefit of a reasonable amount of time to familiarize himself with the law. Modich was not sanctioned for attending these gatherings.

Minutes were kept of the five gatherings. The main topic at each was negotiations with unions representing city employees. Other business was also discussed including, among other things, hiring a city attorney and authorizing city credit cards for councilmembers on January 2; the city's proposed purchase of a building on February 7; a proposed aircraft maintenance base on February 27; consolidation of the police and fire chief positions on March 18; and funding for a drug awareness program on April 5.

The trial court fined each councilmember $100 per "intentional" violation. Collins was fined $500, Sogard and Saban were each fined $400, and Modich was fined $200. Residents were awarded attorney fees in the amount of $700 from each councilmember per "intentional" violation.

## ISSUES

1. Did councilmembers violate the Minnesota Open Meeting Law, Minn.Stat. § 471.-705, subd. 1a (1990)?

2. Were councilmembers' equal protection rights violated by residents' settlement with two of the original defendants?

3. Is councilmembers' removal from office required by the Minnesota Open Meeting Law, Minn.Stat. § 471.705, subd. 2 (1990)?

## ANALYSIS

■ 1. Councilmembers suggest that the challenged February 27 gathering was merely an informal conversation after a regularly scheduled council meeting. The trial court's findings of fact are reviewed under a clearly erroneous standard. Minn.R.Civ.P. 52.01; *Thuma v. Kroschel,* 506 N.W.2d 14 (Minn.App.1993). Interpretation of the Minnesota Open Meeting Law is a legal question subject to de novo review. *Sovereign v. Dunn,* 498 N.W.2d 62, 65 (Minn.App. 1993), *pet. for rev. denied* (Minn. May 28, 1993). Nor is the trial court's application of the law to its findings of fact binding on this court. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 582 (Minn.1977). After considering the facts surrounding the February 27 gathering, the trial court found that the gathering was a meeting and was closed to the public. We cannot conclude that this finding was clearly erroneous. All five of the challenged gatherings were meetings within the scope of the Minnesota Open Meeting Law. *See Moberg v. Independent Sch. Dist. No. 281,* 336 N.W.2d 510, 518 (Minn.1983) (defining "meeting").

The more significant issue is whether the five meetings should have been open to the public pursuant to the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1990). City council meetings must normally be open to the public if they are

> gatherings of a quorum or more members * * * at which members discuss, decide, or receive information as a group on issues relating to the official business of that governing body.

*Moberg,* 336 N.W.2d at 518.

There is a pertinent exception to this general rule. The Minnesota Open Meeting Law

> does not apply to a meeting held * * * to consider strategy for labor negotiations, including negotiation strategies or developments or discussion and review of labor negotiation proposals.

Minn.Stat. § 471.705, subd. 1a. When interpreting this exception, it must be kept in mind that the Minnesota Open Meeting Law is construed in favor of the public. *St. Cloud Newspapers, Inc. v. District 742 Community Schs.,* 332 N.W.2d 1, 4 (Minn.1983). The exception is further limited by statute. An action may be brought

> claiming that public business other than discussions of labor negotiation strategies or developments or discussion and review of labor negotiation proposals was transacted at a closed meeting held pursuant to this subdivision.

Minn.Stat. § 471.705, subd. 1a.

The minutes of the five meetings at issue here reflect discussion of topics unquestionably outside the scope of the labor negotiation exception. Councilmembers concede that they may have made "stray" remarks about other public business, but argue that these "de minimis" remarks should not constitute a violation. We do not find it necessary to determine if there is a de minimis exception to Minn.Stat. § 471.705, subd. 1a. A subject such as the city's purchase of a building is significant public business. The minutes for each of the meetings contain equally clear examples of improper discussions. Although no final action seems to have been taken at the Hibbing meetings, that the discussions took place at all is more important than the actions taken as a factor in discerning whether councilmembers violated the Minnesota Open Meeting Law. *Merz*

*v. Leitch,* 342 N.W.2d 141, 145–46 (Minn. 1984).

■ Councilmembers argue that even if violations occurred, they should not be penalized because they did not intend to violate the law. Generally, civil penalties may not be imposed for unintentional conduct unless "the legislative intent to do so [is] clear." *State v. Neisen,* 415 N.W.2d 326, 329 (Minn. 1987) (reading intent requirement into criminal statute); *see also Twin City Candy & Tobacco Co. v. A. Weisman Co.,* 276 Minn. 225, 236–37 n. 11, 149 N.W.2d 698, 704–05 n. 11 (1967) ("[H]arm without intent is ordinarily justiciable only in civil litigation where all that is sought is injunctive relief.").

Minn.Stat. § 471.705, subd. 1a does not explicitly list intent as an element of a violation of its provisions. *Cf.* Minn.Stat. § 471.-705, subd. 1c(h) (no penalty for failure to provide public with notice of meeting unless violation is "willful and deliberate"). Nevertheless, omission of the word "intent" from the statute does not conclusively demonstrate that the legislature meant that the penalties of the Minnesota Open Meeting Law are to be imposed on the basis of strict liability. *See Willison v. Pine Point Experimental Sch.,* 464 N.W.2d 742, 745 (Minn.App.1991) (although not explicitly required by statutory language, intent necessary to trigger penalties under Minn.Stat. § 471.705, subd. 2).

Furthermore, the supreme court has previously implied that intent is necessary to prove a violation of the Minnesota Open Meeting Law. *See Moberg,* 336 N.W.2d at 518 (" '[C]hance or social gatherings' are exempt from the requirements of the statute."). This protects, for example, a councilmember at a purely social function attended by a council quorum from violating the prohibition on receiving public information if the members are confronted by an individual blurting out information about a public issue. Similarly, if an element of intent is unnecessary, a council quorum could violate the law by holding a meeting it reasonably believes is open to the public, when the public has been excluded by a third party, such as a building manager who forgets to unlock an entrance. Statutes must be construed to avoid such absurd results. *Neisen,* 415 N.W.2d at 329.

It is less clear which act must be "intentional" before a violation may be found. Good faith is not a defense to an alleged violation of the Minnesota Open Meeting Law. *Merz,* 342 N.W.2d at 146. Therefore, a specific intent to violate the statute need not be shown to prove a violation.

Guidance may be found in the definition of intent used in criminal statutes. Minn.Stat. § 609.02, subd. 9(3) (1990) provides that an intentional act is committed when "the actor either has a purpose to do the thing or cause the result specified" and the actor has "knowledge of those facts which are necessary to make the actor's conduct criminal." A similar definition of intent is appropriate in cases brought under Minn.Stat. § 471.705, subd. 1a.

■ We hold that in cases arising under the labor negotiation exception to the Minnesota Open Meeting Law, an official has a purpose to do the thing or cause the result specified when the official purposefully discusses, decides, or receives information on public issues other than labor negotiations at a gathering of a quorum or more of the governing body, when the gathering is closed for the purpose of discussing labor negotiations. An official has knowledge of those facts necessary to make the official's conduct a violation of the law when the official knows or reasonably should know that the meeting is closed for the purpose of discussing labor negotiations, that a quorum or more is present, and that he or she is discussing, deciding, or receiving information on public issues other than labor negotiations. *Cf. Twin City Candy & Tobacco Co.,* 276 Minn. at 231, 149 N.W.2d at 703 (defendant must have opportunity to show honest mistake of fact before civil sanctions may be imposed).

■ In other words, two tests must be met to justify a finding that a member of a governing body has violated the labor negotiation exception in Minn.Stat. § 471.705, subd. 1a. First, it must be shown that (1) the member was present at a gathering of a quorum or more of the governing body; (2) the gathering was closed for the purpose of discussing labor negotiations; and, (3) the member purposefully discussed, decided, or

received information on public issues other than labor negotiations. Second, it must be shown that the member knew or reasonably should have known that (1) a quorum or more of the governing body was present; (2) the meeting was closed for the purpose of discussing labor negotiations; and, (3) the information the member discussed, decided, or received pertained to public issues other than labor negotiations.

 When this standard is applied to the facts as found by the trial court, it is clear that Collins, Sogard, and Modich each committed five violations of the law, and Saban committed four. The trial court correctly noted, however, that while a defendant's good faith is not a complete defense, it may be considered when a court fashions a remedy for violations of the Minnesota Open Meeting Law. *St. Cloud Newspapers, Inc.*, 332 N.W.2d at 8. Since good faith is a question of fact, the trial court's selection of a remedy for a violation of a Minnesota Open Meeting Law violation will not be disturbed absent an abuse of discretion. *See Uselman v. Uselman*, 464 N.W.2d 130, 140–42 (Minn. 1990) (existence of bad faith is fact question; award of sanctions as result of bad faith reviewed under abuse of discretion standard). By fashioning its remedy in response to the "unintentional" nature of some of the violations by Sogard and Modich, the trial court responded to their claims of good faith. The trial court did not abuse its discretion by declining to impose fines on Sogard and Modich for some of their violations.[1]

2. Councilmembers claim that their equal protection rights were violated when residents pursued the complaint against them after settling the claims against Nicollelli and Pierce. We disagree.

 State action is necessary to trigger equal protection analysis. *Unborn Child v. Evans*, 310 Minn. 197, 202–03, 245 N.W.2d 600, 604 (Minn.1976). The actions of a private party may be state actions for the purpose of proving an equal protection violation "where a sufficiently close nexus exists between the state and the challenged activity." *Brennan v. Minneapolis Soc'y for the Blind, Inc.*, 282 N.W.2d 515, 526 (Minn.1979). Here, the state has played no active role in the proceedings and there is no nexus between the state and the complaints against councilmembers.

State action may also be found in the actions of a private party where "a *Burton*-type symbiotic relationship is present" between the state and the private party. *Brennan*, 282 N.W.2d at 526 (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). State regulation alone does not create the necessary symbiosis. *Brennan*, 282 N.W.2d at 527. Rather, there must be sufficient evidence "that the 'power, property, and prestige' of the state has been in fact placed behind the discriminatory conduct." *Id.* at 528 (quoting *Burton*, 365 U.S. at 725, 81 S.Ct. at 862). There is no evidence in this case that governmental resources were behind residents' actions or that a symbiotic relationship existed between residents and the state.

 In addition, even if residents had been state actors, a person claiming a violation of "equal protection of the law against its otherwise lawful sanctions" faces a substantial burden of proof. *State v. Andrews*, 282 Minn. 386, 394 n. 9, 165 N.W.2d 528, 534 n. 9 (1969). A party alleging unequal administration of a statute must show intentional and purposeful discrimination. *Id.* at 392, 165 N.W.2d at 532. Within these boundaries, even state-employed prosecutors may exercise discretion in determining how similarly situated defendants will be treated. *State v.*

1. Minn.Stat. § 471.705, subd. 2 creates personal liability for the $100 fines that may be imposed for violation of the Minnesota Open Meeting Law. As was pointed out at oral argument, the true cost to defendants in these cases is often attorney fees. While we do not decide the issue, we note that a municipality "shall defend and indemnify" its officers and employees who have acted in the performance of the duties of their position and have not been "guilty of malfea-sance in office, willful neglect of duty, or bad faith." Minn.Stat. § 466.07, subd. 1 (1990). In the past, the duty to defend and indemnify was limited to tort claims and may not have applied to the defense of claims brought under the Minnesota Open Meeting Law. Op.Att'y Gen. 471–a (Apr. 29, 1983) (discussing Minn.Stat. § 466.07, subd. 1a (1982)). The legislature has since removed the statute's explicit reference to tort claims.

*Anderson,* 280 Minn. 461, 464–65, 159 N.W.2d 892, 895 (1968). Councilmembers have not proved that residents intentionally discriminated against them by settling the complaints against Nicollelli and Pierce.

Prosecution of the claim against councilmembers was not state action and councilmembers have not proved that residents intentionally discriminated against them. Councilmembers' equal protection rights were not violated.

3. Residents contend that a councilmember found to have committed more than three violations of the Minnesota Open Meeting Law must be removed from office. Their argument is derived from Minn.Stat. § 471.705, subd. 2:

> Upon a third violation by the same person connected with the same governing body, such person shall forfeit any further right to serve on such governing body or in any other capacity with such public body for a period of time equal to the term of office such person was then serving. The court determining the merits of any action in connection with any alleged third violation shall receive competent, relevant evidence in connection therewith and, upon finding as to the occurrence of a separate third violation, unrelated to the previous violations issues its order declaring the position vacant.

Councilmembers argue that their removal from office would unconstitutionally add conditions to their ability to hold and run for office.

■ An individual who has not been disadvantaged by the application of a statute may not challenge the statute's constitutionality. *In re Welfare of A.K.K.,* 356 N.W.2d 337, 343 (Minn.App.1984). Councilmembers have not been prevented from running for office and may not challenge the Minnesota Open Meeting Law on those grounds. As office holders, they do have standing to challenge the constitutionality of the law's removal provisions. In evaluating this challenge, we must keep in mind that if a law is reasonably open to two constructions, one that renders the law unconstitutional and one that does not, this court must adopt the interpretation that uphold's the law's constitutionali-

ty. *Head v. Special Sch. Dist. No. 1,* 288 Minn. 496, 506, 182 N.W.2d 887, 893 (1970), *cert. denied,* 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971). This is true even if the unconstitutional interpretation is more natural. *Id.* Moreover, we must presume the legislature intended to enact a constitutional law. *Id.* at 506, 182 N.W.2d at 894.

Minn. Const. art. 8, § 5 provides:

> The legislature of this state may provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their duties.

Put another way, elected municipal officers, including city councilmembers, "may not be removed except for malfeasance or nonfeasance in office." *Jacobsen v. Nagel,* 255 Minn. 300, 304, 96 N.W.2d 569, 572–73 (1959) (holding removal of city councilman governed by Minn. Const. art. 13, § 2 (1857), identical predecessor to Minn. Const. art. 8, § 5).

■ Minn.Stat. § 471.705, subd. 2 can be constitutionally interpreted within this framework. We hold that an "inferior officer" may be removed from office for violating the Minnesota Open Meeting Law if the violations constitute malfeasance or nonfeasance in office.

■ The Minnesota Legislature has defined "malfeasance" and "nonfeasance" in the context of procedures for removing county officials:

> "Malfeasance" means the willful commission of an unlawful or wrongful act in the performance of a public official's duties which is outside the scope of the authority of the public official and which infringes on the rights of any person or entity.

> "Nonfeasance" means the willful failure to perform a specific act which is a required part of the duties of the public official.

Minn.Stat. § 351.14, subds. 2, 3 (1990). Malfeasance by a public official suggests "evil conduct or an illegal deed." *Jacobsen,* 255 Minn. at 304, 96 N.W.2d at 573 (quoting 43 Am.Jur., *Public Officers,* § 195). Nonfeasance is the "neglect or refusal, without sufficient excuse, to do that which is the officer's legal duty to do." *Id.* at 304, 96 N.W.2d at

573 (quoting 43 Am.Jur., *Public Officers,* § 196). The neglect must at least approach recklessness. *See Farmers Ins. Exchange v. Village of Hewitt,* 274 Minn. 246, 258, 143 N.W.2d 230, 238 (1966) ("Willful negligence" suggests a reckless failure to exercise ordinary care.). By contrast, a county official's "negligent performance of" or "negligent failure to perform a specific act which is a required part of the [official's] duties" is misfeasance and does not, without more, rise to the level of malfeasance or nonfeasance.[2] Minn.Stat. § 351.14, subd. 4 (1990).

The record does not support a finding that councilmembers acted recklessly or with evil intent. Instead, the record displays councilmembers who carelessly failed to appropriately restrict their conversations during meetings that were properly closed for the purpose of discussing labor negotiations. This may be misfeasance. It is neither malfeasance nor nonfeasance. The trial court properly refused to remove councilmembers from office.

## DECISION

The trial court did not abuse its discretion in determining the appropriate penalties for councilmembers' violations of the Minnesota Open Meeting Law. Councilmembers' equal protection rights were not violated. The trial court properly declined to remove councilmembers from office.

**Affirmed.**

---

2. In *Willison,* 464 N.W.2d at 745, we determined that "the correct standard is whether the violation was intentional, not willful and deliberate" for the purpose of applying Minn.Stat. § 471.705, subd. 2. *Willison* did not address the constitutional issues involved in removing an elected official from office. As today's decision explains, to the extent that willfulness is a necessary element of malfeasance and nonfeasance, it is a constitutionally necessary element of the removal provision of Minn.Stat. § 471.705, subd. 2.