**In the Matter of the Complaint of the MINNESOTA DEPARTMENT OF COMMERCE FOR COMMISSION ACTION AGAINST AT & T Regarding Negotiated Contracts for Switched Access Services.**

No. A08–0382.

Court of Appeals of Minnesota.

Jan. 13, 2009.

William E. Flynn, Lindquist & Vennum, Minneapolis, MN and Jeffrey A. Berger (pro hoc vice), Mayer Brown, Washington, DC, for AT & T.

Lori Swanson, Attorney General, Jeanne M. Cochran, Assistant Attorney General, St. Paul, MN, for Minnesota Public Utilities Commission.

Considered and decided by HUDSON, Presiding Judge; LARKIN, Judge; and COLLINS, Judge.

## O P I N I O N

COLLINS, Judge.*

Relator AT & T Communications of the Midwest, Inc. (AT & T) challenges the determination by respondent Minnesota Public Utilities Commission (MPUC) that (1) switched-access services are local services and thus are not exempt from the provisions of chapter 237; (2) AT & T knowingly and intentionally violated state filing and anti-discrimination requirements; and (3) Minn.Stat. § 237.462 (2004), under which the MPUC imposed penalties for these violations, had expired but was saved by the general saving statute. AT & T also contends that the MPUC's penalty decision was arbitrary and capricious.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

AT & T is a "telecommunications carrier," as defined by Minn.Stat. § 237.01, subd. 6, and is authorized to operate in Minnesota as an interexchange carrier (IXC) and as a Competitive Local Exchange Carrier (CLEC).[1] Chapter 237 and related rules are the primary laws governing telecommunications carriers. *See* Minn.Stat. §§ 237.01–.81; Minn. R. 7812.0050–2300 (2007). The legislature identifies the goals to be considered in regulating telecommunications services, including "maintaining just and reasonable rates" and "encouraging fair and reasonable competition for local exchange telephone service in a competitively neutral regulatory manner." Minn. Stat. § 237.011, subds. (2), (4).

On January 27, 2004, AT & T and MCI entered into reciprocal agreements under which each would receive switched-access service from the other's local services division at a significantly reduced rate.[2] These agreements were not filed with the MPUC, but AT & T had a tariff for switched-access services on file with the MPUC listing a significantly higher rate than that listed in the agreements between AT & T and MCI.

In June 2004, the Minnesota Department of Commerce filed a complaint against several CLECs, including AT & T and MCI, for failure to file rates contained in switched-access-service agreements. With the exception of AT & T, MCI and the other CLECs settled the claims and were assessed penalties between $400 and $5,000. In January 2006, proceedings against AT & T were referred to the Minnesota Office of Administrative Hearings for a contested case proceeding.

In response to the department's motion for summary disposition, an administrative law judge (ALJ) found that AT & T had knowingly and intentionally violated statutes and rules that required the filing of rates and prohibited unreasonable discrimination. The ALJ found that AT & T and MCI had entered into agreements to provide each other with switched-access services for reduced rates and that neither entity had filed or tariffed those rates as required. The ALJ was not persuaded by AT & T's argument that switched-access services are not local services, finding that language in rules and statutes made it evident that switched-access services are local services. Based on these findings, the ALJ recommended that the department's motion for summary disposition be granted.

In November 2006, the ALJ held an evidentiary hearing on the sanction to be imposed. The ALJ stated that the MPUC is permitted to assess penalties under Minn.Stat. § 237.462 (2004) for knowing and intentional violations, and evidence was presented on the penalty factors set forth therein. On June 1, 2007, the ALJ recommended that (1) AT & T be ordered to pay penalties of $1,000 per day for the 552 days of violation, for a total of $552,000; (2) the agreement between AT & T and MCI be stripped of its trade-secret protection, be made part of the public record in this case, and be filed with the department; and (3) AT & T's request for trade-secret protection be granted for certain testimony and exhibits but denied for others.

---

**1.** A CLEC is a telecommunications carrier that is certified to provide local services. An IXC is a long distance carrier.

**2.** A long-distance call originates and terminates with local exchange carriers, with the IXC serving as the bridge between the two. Switched-access charges are a type of access fee that the IXC pays for the use of the local networks. *See Sw. Bell Tel. Co. v. FCC,* 138 F.3d 746, 747 (8th Cir.1998).

On September 18, 2007, oral arguments were presented to the MPUC. On September 20, 2007, the MPUC adopted the ALJ's findings that AT & T had violated several rate-filing and anti-discrimination statutes and regulations[3] and ordered AT & T to pay a penalty of $552,000 and file its agreement. This appeal followed.

## ISSUES

I. Are CLEC switched-access services "local services" within the meaning of Minn.Stat. §§ 237.01–.81?

II. Did the MPUC err by concluding that AT & T knowingly and intentionally violated Minnesota law?

III. Did the MPUC err by finding that its powers under Minn.Stat. § 237.462, which had expired, were retained through the general saving statute, Minn.Stat. § 645.35?

## ANALYSIS

■■■ On judicial review of an action taken by an administrative agency, the party seeking review has the burden of proof. *Markwardt v. State, Water Res. Bd.*, 254 N.W.2d 371, 374 (Minn.1977). "In considering such questions of law, reviewing courts are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). "With respect to factual findings made by the agency in its judicial capacity, if the record contains substantial evidence supporting a factual finding, the agency's decision must be affirmed." *City of Moorhead v. Minn. Pub. Utils. Comm'n*, 343 N.W.2d 843, 846 (Minn.1984).

## I.

■■■ "The construction of a statute or a regulation is a question of law to be determined by the court." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn.2003).

When reviewing agency decisions we adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience. The agency decision-maker is presumed to have the expertise necessary to decide technical matters within the scope of the agency's authority, and judicial deference, rooted in the separation of powers doctrine, is extended to an agency decision-maker in the interpretation of statutes that the agency is charged with administering and enforcing.

*In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn.2001) (footnote omitted) (quotations and citations omitted).

AT & T argues that, as a telecommunications carrier operating as a CLEC, it is exempt from nearly all of chapter 237 and that the MPUC erred by holding that AT & T violated sections 237.07, .09, .60 and rule 7812.2210. AT & T does not dispute

---

**3.** The MPUC found violations of (1) Minn. Stat. § 237.74 (2006) (including filing requirements, anti-discrimination provisions, special-pricing provision); (2) Minn. R. 7812.2210, subps. 2, 3, 5 (2007) (requiring uniform rates that are not unreasonably discriminatory); (3) Minn.Stat. § 237.121, subd. (a)4 (2006), and Minn. R. 7812.2210, subp. 9 (requiring provision of service in accordance with tariffs, price lists, contracts, rules, and orders); (4) Minn. R. 7810.0500, subp. 1 (2007) (requiring filed rates); (5) Minn.Stat. § 237.07, subd. 1 (2006) (requiring filing of specific rates and noncompetitive services); and (6) Minn.Stat. § 237.09, subd. 1 (2006) (requiring similar charges for services to IXCs under similar circumstances).

that a telecommunications carrier's local services are subject to the chapter or that switched-access services facilitate the ability to make long distance calls. AT & T contends, however, that switched-access services are not local services. AT & T points to language in various statutes and regulations in support of its argument, including MPUC regulations that set forth requirements for how telecommunications carriers relate to each other, which are not referred to as local services, with those that use the term "local services" and are associated only with services to customers and end users. *See* Minn. R. 7812.0600 (2007) (imposing requirements on provision of local services and separately on inter-carrier interactions); *see also* Minn. R. 7812.0100, subp. 13, .0700, subps. 1, 2, .2210 (2007) (same).

The MPUC counters that the legislature has provided that switched-access services are local services. *See* Minn.Stat. § 237.773, subd. 3(b) (stating that "a small telephone company may change rates for local services *except* switched network access services" (emphasis added)). The MPUC also refers to section 237.761, which describes switched-network-access service as "essential for providing local telephone service," maintaining that, because switched-access services are essential for local services, they fall within the definition of "local services." Additionally, the MPUC argues that, to the extent there is ambiguity in the term "local services," "this Court should defer to the Commission's reasonable interpretation of these statutes and rules, which it administers."

The definition section of chapter 237 does not specifically define "local services." As such, both parties rely on various statutes and regulations that in some way refer to "local services" but do not clearly define the term as it relates to a telecommunications carrier's potential exemption from most of chapter 237. Because this term is technical in nature as it relates to the telecommunications industry, the MPUC's expertise in interpreting this term is to be considered. The MPUC is authorized to enforce and administer chapter 237, and "judicial deference, rooted in the separation-of-powers doctrine, is extended to an agency decision-maker in the interpretation of statutes that the agency is charged with administering and enforcing." *Blue Cross*, 624 N.W.2d at 278. The MPUC's interpretation of the term "local services" is reasonable, and considering its expertise in this technical area, the MPUC did not err by finding that switched-access services are included in local services. Thus, AT & T is not exempt from the provisions of chapter 237.

## II.

*Failure to File Unique Rates and Offering Non–Tariffed Rate*

Among other things, Minn.Stat. § 237.74, subds. 1–3, describes filing requirements; prohibits discriminatory practices, services, and rates; and provides for special pricing. Telecommunications carriers are required to file "either a tariff or a price list for each service on or before the effective date of the tariff or price." Minn. Stat. § 237.74, subd. 1. Under certain circumstances, unique prices may be offered to a particular customer, a group of customers, or as volume discounts. *Id.,* subds. 2, 3. However, a telecommunications carrier cannot engage in certain practices, such as providing those services that are not "in accordance with its applicable tariffs, price lists, or contracts and with the commission's rules and orders." Minn.Stat. § 237.121(a)(3).

AT & T argues that the department failed to prove that AT & T violated Minn. Stat. §§ 237.74 and .121, which, according to AT & T, are the only provisions that

apply to non-local telecommunications services. AT & T contends that there is a distinction between tariffs and unique pricing agreements, such as that in the contract with MCI, and that section 237.74 does not require the filing of unique price contracts, which are expressly permitted in section 237.74, subdivisions 2 and 3.

■ Examination of the first three subdivisions of section 237.74, taken as a whole, requires the interpretation that telecommunications carriers are permitted to offer unique rates, but it also requires that those rates be filed. If the legislature had intended that unique rates be exempt from the filing requirement, it would have included clear and explicit language in one of the three subdivisions to that effect, particularly since subdivision 1 requires the filing of a tariff or price list "for each service." Minn.Stat. § 237.74, subd. 1. There is no provision in the statute exempting unique prices from the filing requirements, and the legislature's silence on the question of filing in subdivisions 2 and 3 does not create an exception to the rate-filing requirement in subdivision 1. To hold otherwise would render the filing requirements meaningless, particularly in light of the public-policy justifications for the requirements.

As described by the United States Supreme Court regarding the federal communications act, "[t]he duty to file rates with the Commission ... and the obligation to charge only those rates ... have always been considered essential to preventing price discrimination and stabilizing rates." *MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.,* 512 U.S. 218, 230, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994) (quotation omitted). The goals enumerated by the legislature to be considered by the MPUC in regulating telecommunications services

include "maintaining just and reasonable rates" and "encouraging fair and reasonable competition for local exchange telephone service in a competitively neutral regulatory manner." Minn.Stat. § 237.011, subds. (2), (4). We decline the invitation to create an exemption for the filing of unique rates when the legislature did not provide for it explicitly.

*Violation of Anti–Discrimination Requirements*

■ Telecommunications carriers are prohibited from offering services that are unreasonably discriminatory. Minn.Stat. § 237.74, subd. 2. Rates must be the same in all geographic locations unless the MPUC approves different rates for good cause. *Id.* Companies offering long-distance services must charge uniform rates but may provide volume or term discounts or unique pricing for special promotions to certain customers or geographic locations. *Id.*

The MPUC found that AT & T failed to meet the requirements of Minn. R. 7812.2201, subp. 5, which deals with discrimination and, at a minimum, requires CLECs to choose one of three options: "file tariffs with uniform rates, file tariffs providing for non-uniform rates based on one of six rationales, or obtain prior Commission approval to provide non-uniform rates based on some other rationale."[4] The MPUC found that AT & T failed to comply with these "minimum requirements of the state's anti-discrimination laws," including rule 7812.2210, subpart 5, and by extension Minn.Stat. §§ 237.16, .74, subd. 2. The MPUC determined that, because AT & T did not file the rates, the question of whether the MPUC would have found them to be reasonable if AT & T had filed them was irrelevant.

4. AT & T also contends that the MPUC erred by relying on Minn. R. 7812.2210 because

that rule applies only to local services, the definition of which is discussed above.

AT & T contends that the MPUC failed to recognize the distinction between discriminatory and *unreasonably* discriminatory, as required by the statute, and that the department "made no effort to satisfy its burden of proving that the rates in the CLEC agreement constituted *unreasonable* discrimination."

The MPUC did not examine evidence of unreasonableness beyond the fact that AT & T did not file the unique rates contained in the agreement with MCI. Rather, it relies on the minimum requirements described in Minn. R. 7812.2210, subp. 5, which regulates CLECs and states: "No CLEC may offer telecommunications service within the state on terms or rates that are unreasonably discriminatory. At a minimum, a CLEC must provide its telecommunications services in accordance with items A to D." The second sentence describes the minimum requirements to meet the terms of the first sentence prohibiting unreasonably discriminatory rates.

There are strong public-policy reasons supporting the MPUC's finding that the unfiled rates are unreasonably discriminatory. The filing of rates not only makes it possible for regulators to determine whether the rates are reasonable, but also provides potential customers with the opportunity to seek similar rates themselves. As stated by the United States Supreme Court, "[t]he duty to file rates with the Commission . . . and the obligation to charge only those rates . . . have always been considered essential to preventing price discrimination and stabilizing rates." *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990).

Given the deference that we afford to an agency's interpretation of its own regulations and the fact that this is a reasonable understanding of the regulation, the MPUC's determination that AT & T's failure to meet the minimum requirements constitutes unreasonable discrimination is not erroneous.

*Knowing and Intentional Violations*

■ AT & T argues that the department failed to prove that AT & T knowingly and intentionally violated the statutes and rules. AT & T contends that even if its understanding of "local services" was inaccurate, the department failed to demonstrate that AT & T knew that its actions were illegal.

The MPUC maintains that the undisputed facts confirm that AT & T knew that switched-access services were required to be tariffed and that AT & T intentionally gave MCI a substantially lower rate than that in its tariff. Based on these facts, the MPUC concluded that AT & T committed a knowing and intentional violation, a standard that does not require knowledge of the law and intent to break the law, but rather requires that the actor "has a purpose to do the thing or cause the result specified" and has knowledge of those facts that give rise to the violation. *Claude v. Collins*, 507 N.W.2d 452, 456 (Minn.App.1993) (holding that knowledge of the law and "a specific intent to violate the statute need not be shown to prove a violation" (quotation omitted)), *rev'd on other grounds*, 518 N.W.2d 836 (Minn. 1994).

We agree with the MPUC's adoption of the "knowing and intentional" standard as defined in the statute:

> "Know" requires only that the actor believes that the specified fact exists. . . . "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result. In addition . . . the actor must have knowl-

edge of those facts which are necessary to make the actor's conduct criminal. Minn.Stat. § 609.02, subd. 9(2)-(3) (2008). Here, AT & T intentionally did not file the rates in the agreement, charged MCI a much lower rate than that in its tariff, and knew that it had not filed the rates being charged to MCI. Thus, the MPUC's finding that AT & T knowingly and intentionally violated the statutes and rules is not erroneous.

### III.

 The MPUC penalized AT & T pursuant to section 237.462 and utilized the factors outlined in that statute in its penalty analysis. The legislature granted the MPUC the authority to assess penalties for violations of sections 237.09, .121, .16, .411 and rules adopted pursuant to those sections in Minn.Stat. § 237.462 (2004). That statute expired on August 1, 2006.[5] The MPUC argues that it maintains the authority to penalize AT & T because the proceeding was initiated before the expiration of Minn.Stat. § 237.462 and thus was saved by the general saving statute, Minn. Stat. § 645.35 (2006). The general saving statute states:

> The repeal of any law shall not affect any right accrued, any duty imposed, any penalty incurred, or any proceeding commenced, under or by virtue of the law repealed. Any civil suit, action, or proceeding pending to enforce any right under the authority of the law repealed shall and may be proceeded with and concluded under the laws in existence when the suit, action, or proceeding was instituted, notwithstanding the repeal of such laws; or the same may be proceeded with and concluded under the provisions of the new law, if any, enacted.

Minn.Stat. § 645.35. Relying on *State v. Chicago Great W. Ry.*, 222 Minn. 504, 509–10, 25 N.W.2d 294, 297 (1946), the MPUC contends that the plain language of the saving statute dictates that a proceeding that is initiated before the repeal of a law proceeds under the laws as they existed at the time the proceeding began. The MPUC argues that because the legislature did not exempt the repeal of Minn.Stat. 237.642 from the general saving statute, the case should proceed under that statute.

AT & T counters that, rather than being repealed so as to come within the ambit of the saving statute, section 237.462 expired through a sunset provision enacted before the proceedings were initiated against AT & T. AT & T contends that a repeal requires a second statute that "rescinds, revokes, or otherwise is incompatible with an earlier statute," whereas a sunset provision includes an expiration date within the statute itself. AT & T argues that the application of Minn.Stat. § 237.462 as it existed when the department initiated proceedings against AT & T in June 2004 requires recognition that it then provided for the expiration of MPUC's penalty powers on August 1, 2006. AT & T asserts that reviving the penalty authority because the legislature did not exempt the repeal of Minn.Stat. 237.642 from the general saving statute would ignore the expiration date in Minn.Stat. § 237.462, contrary to the clearly expressed legislative intent at the time of enactment.

Relying on *Granville v. Minneapolis Pub. Sch., Special Sch. Dist. No. 1*, 732 N.W.2d 201, 205 (Minn.2007), the MPUC contends that the Minnesota Supreme Court has held that there is no meaningful

---

**5.** Minn.Stat. § 237.462 was enacted in 1999 with an explicit expiration date of December 31, 2004. 1999 Minn. Laws ch. 224, § 6. In 2004, the expiration date was extended to August 1, 2005, 2004 Minn. Laws ch. 261, art. 6, § 7, and in 2005, it was extended to August 1, 2006, 2005 Minn. Laws, 1st Spec. Sess. ch. 1, art. 4, § 117.

difference between a law that has been repealed and one that has expired. But the *Granville* court addressed the repeal of a repealer under section 645.36, not the repeal of a law under section 645.35. Although the MPUC argues that the *Granville* court's holding instructs that a repeal and a sunset provision are both subject to section 645.35, there is a clear distinction between repeal and sunset related to this section. AT & T argues that the general saving statute saves repealed laws because of due process concerns that a repeal could impinge on a vested right granted by the original law, a circumstance that does not exist when the legislature has acted prospectively by including an expiration date in the original statute.[6]

 AT & T's argument is persuasive. For the purpose of the general saving statute, a statute that is repealed is treated differently from one that has expired by its own terms. The due process concerns underlying the general saving statute do not exist with a statute that includes an expiration date because the original statute gives notice to all that the statute will expire on a specific date. Moreover, the statute was extended twice previously, establishing that the MPUC understood that it could seek an extension of the penalty authority when it became evident that it could not complete pending dockets before August 1, 2006. The MPUC did not do so, and such an extension should not be implied by operation of the saving statute. Accordingly, because Minn.Stat. § 237.462 is not saved by the general saving statute, the MPUC did not have the power to impose penalties after August 1, 2006.

Having concluded that the MPUC lacked the power to impose penalties under Minn.Stat. § 237.462, we need not reach the issues of whether the MPUC had a vested right to impose a penalty or whether the penalty imposed was arbitrary and capricious.

## DECISION

Because we extend deference to agency decision-makers' expertise and special knowledge in interpretation of the statutes they are charged with administering, and the terms "switched access services" and "local services" are technical in the context of telecommunications services, the MPUC did not err by finding that switched-access services are within the statutory definition of local services and thus AT & T's switched-access services are not exempt from the provisions of chapter 237 covering local services. Because Minn.Stat. § 237.74 does not exempt unique pricing from the filing requirements and because AT & T knowingly did not file the unique rates and charged a lower rate than that in its tariff, the MPUC did not err by finding that AT & T violated the filing requirements. Because interpreting the failure to meet minimum requirements of the anti-discrimination regulations as unreasonable discrimination is reasonable, and we give deference to an agency's interpretation of its own regulations, the MPUC did not err by finding that AT & T violated anti-discrimination requirements. But because Minn.Stat. § 237.462 is not saved by the general saving statute, and the penalty provisions expired on August 1, 2006, the MPUC did not have the power in Septem-

---

**6.** "50 Am.Jur., Statutes, § 527, discusses the effect of general saving clauses in the following language: ... Such general saving provisions are declarative of a continuing policy of the state that the repeal of any statute shall not release or extinguish any liability in- curred, or affect any right accrued or claim arising, before the repeal takes effect, unless the repealing act expressly otherwise provides." *Chicago Great W. Ry.*, 222 Minn. 504 at 509, 25 N.W.2d at 297.

ber 2007 to impose penalties under section 237.462.

**Affirmed in part and reversed in part.**